EHRLICH V. THE ÆTNA LIFE INSURANCE COMPANY,
Appellant.

DIVISION ONE.

1.  Contract: AGENCY: PENALTY.  A contract between an insurance company and its agent required him to furnish $250,000 of new insurance each year during a period of four years, and provided a penalty in case of failure to do so, and also that if the agent furnished $1,000,000 of insurance in the four years the penalty should be refunded.  *Held* that the agent's failure to furnish the specified amount of insurance during the first year did not constitute a breach of the contract, he having paid the penalty therefor.

2.  Contract, Construction of: AGENT: USAGE.  Where such agent contracted to devote his entire time and energy " to the business of the company and to no other," he is bound to give his time and energy to such business with that degree of diligence and attention which is usual among business men engaged in similar business and the usage of such men will qualify the agency.

3.  ———— : ———— : ————.  While the agent has not the absolute right to leave his business for a month and a half for a summer vacation, still the fact that good business men are accustomed to take summer vacations, for a greater or less length of time, is to be considered with the other evidence in determining whether the agent complied with the terms of his contract.

4.  ———— : CUSTOM.  A custom to be a fixed element of a contract must be certain, settled and uniform.

5.  Pleading: BREACH OF CONTRACT: WAIVER.  Where a plaintiff sues on a contract, alleging in his petition, in general terms, a performance of its conditions on his part, and the defendant in the answer sets up breaches of said contract by plaintiff, a waiver of such breaches to admit proof of same should be pleaded in the reply.

6.  Practice: SUIT ON CONTRACT: DIRECTING VERDICT.  Where in an action on such contract the undisputed evidence shows its breach by plaintiff and the right of defendant for that reason to terminate it, the court should so direct the jury.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED.

*G. A. Castleman* and *D. C. Webb* for appellant.

( 1 ) The court erred in giving instruction, prayed by defendant, declaring the plaintiff contracted to furnish $1,000,000 new insurance in four years, and that it was not a breach of the contract for plaintiff to fail to furnish $250,000 new insurance in the first year of said contract. ( 2 ) The court erred in refusing the instruction, prayed by defendant, declaring that, under the evidence, the jury could not find that there existed in St. Louis a custom for general agents of insurance companies to take a vacation in the months of July and August. ( 3 ) The court erred in refusing instruction, asked by defendant, declaring that, if plaintiff failed to remit to defendant the money collected by him, defendant had a right to revoke said contract. ( 4 ) The case was submitted upon the testimony offered upon the case in chief; there was no conflict of testimony, and the three breaches assigned in the foregoing points were conclusively shown. It was, therefore, error for the court to refuse instruction asked by defendant at close of plaintiff's case, in the nature of a demurrer to the evidence. ( 5 ) Plaintiff, having pleaded that he absented himself from the business in pursuance of custom, must rest his justification on that plea. *Weil v. Posten*, 77 Mo. 287; *State v. Roberts*, 62 Mo. 388; *Kuhn v. Weil*, 6 Mo. App. 576; s. c., 73 Mo. 213; *Nichols v. Larkin*, 79 Mo. 264; *Murdock v. Brown*, 16 Mo. App. 548. A party cannot introduce evidence to contradict the averment of his own pleading. *Bank v. Armstrong*, 62 Mo. 65; *Pullis v. Sims*, 34 Mo. 246. ( 6 ) Custom cannot be set up to vary or contradict an express stipulation of a contract. Clark's Brown on Usages and Customs, pp. 60, 81, 155, 161, 165, 169, 170, 237, 260. ( 7 ) The contract involving one of personal service, plaintiff cannot recover on a *quantum meruit*. *Henson v. Hampton*, 31

Mo. 410; *Caldwell v. Dickson*, 17 Mo. 575; *Earp v. Tylor*, 73 Mo. 619. Wherever recovery on *quantum meruit* is permitted it is limited to the price fixed by the contract. *Lowe v. Sinclair*, 27 Mo. 311; *Downey v. Burk*, 23 Mo. 228; *Helm v. Wilson*, 4 Mo. 41; *Lee v. Ashbrook*, 14 Mo. 378; *Lambert v. Hartshorne*, 65 Mo. 551.

*Noble & Orrick* for respondent.

( 1 ) The court did not err in giving instruction 1 for respondent. *Ehrlich v. Ins. Co.*, 88 Mo. 255. ( 2 ) Where evidence of custom is given to control the construction of a written instrument, the jury are to determine its effect. *Dawson v. Kittle*, 4 Hill, 107 ; *Goodyear v. Ogden*, 4 Hill, 104; *Lewis v. Marshall*, 7 Man. & Gr. 729 ; *Hutchinson v. Bowker*, 5 Man. & Gr. 535 ; *Nelson v. Hill*, 8 M. & W. 806 ; Phillips on Ev., 408, 420.

BLACK, J.—This is a suit based upon a contract executed by the defendant and the plaintiff, and dated September 16, 1880. On the first trial there was a judgment in favor of the plaintiff, which was reversed and the cause remanded by the St. Louis court of appeals.

Under former laws plaintiff appealed from that to this court, and we affirmed the judgment of the court of appeals, disposing of such questions as were then urged in this court on the record before us. The case was again tried on amended pleadings, the trial resulting in a judgment for the plaintiff in the sum of $4,991.53, and the defendant, under present laws, appealed directly to this court.

By the terms of the contract defendant appointed the plaintiff as its general agent to procure applications for life insurance throughout this state, Jackson county excepted ; to receive premiums upon all policies issued upon such applications ; to collect premiums upon renewals of the same, and to collect renewal premiums upon existing policies. For his services, and those of his agents, he was to have commissions on premiums

collected, that is to say, twenty-five and thirty per cent. of the first year's premiums on term policies, and seven per cent. on single-payment policies, and a like per cent. on premiums collected on second and subsequent years on term policies "while he is actively working his territory."

The other material stipulations of the contract are in these words:

"This agreement further witnesseth: That said party of the second part hereby accepts the agency of said company and agrees to devote his entire time and energy to the business of said company and to no other, and employ a sufficient number of agents to canvass the territory named and to see that the company is represented therein by efficient, active agents; that he will be responsible to said company for all premiums on policies and renewals sent him and for all papers and documents intrusted to him; that he will account to said company on or before the tenth day of each month, or at any other time when required, for all premiums received by him, or his agents, and remit the amount of the same less such charges as he is entitled to by this agreement, and that he will conduct the business in all respects in accordance with the instructions of the party of the first part. * * * This contract is to continue in force and effect so long as the agreements made by said Ehrlich are fully complied with. Should said Ehrlich fail to comply with any of the conditions or obligations of this agreement it may be terminated by said company without delay. * * * Said Ehrlich agrees to furnish said company with at least two hundred and fifty thousand dollars ($250,000) new insurance each year during the term of four years from date hereof, on which the premiums are paid and reported to said company within the year. And if he fails to obtain that amount he will pay to the company seventy-five cents for each $1,000 which he lacks of furnishing the required $250,000 new insurance for that year, and to pay a like

sum for each succeeding year during the term of four years. If in any one year said Ehrlich obtains, pays and reports to said company more than $250,000 new insurance the excess shall be credited on the succeeding year. And, if during the four years he shall obtain, pay and report to said company $1,000,000 new insurance then the company shall return to said Ehrlich what he has paid it because of not furnishing the required amount. The books and records at the office in St. Louis are the property of the company and are subject to its inspection at any and all times."

The plaintiff in his amended petition sets out in full the foregoing contract and states that he complied with all its provisions; that he took a summer vacation from July 13, 1881, to September 1 of that year, and that he did this pursuant to a well-known custom and usage among managers of life-insurance business; that defendant made breach of its contract in this, that on and after February 27, 1882, it refused to send to him the renewal premium receipt for collection, and refused to recognize him as agent; that defendant attempted to cancel the contract, and did on said last-mentioned date appoint another person to take charge of the business; that for the seventeen and one-half months he rendered services for the defendant reasonably worth $10,500, and expended moneys of his own in and about the agency, namely, $1,800 for office rent, $500 for clerk hire, and $200 for signs and stationery. Admits he has in his hands $1,848.15, and asks judgment for $11,451.85.

The answer admits the contract and that plaintiff took the vacation, but denies the alleged custom, the rendition of the alleged services and payment of expenses, and justifies the cancellation of the contract because of breaches thereof by the plaintiff in these respects: That he failed and refused to devote his entire time and energies to the business of the company, but on the contrary devoted a large portion of his

time to outside business and absented himself from his agency sometimes for months ; that he did not employ a sufficient number of agents to canvass the territory named in the contract; that he failed to account to the company on or before the tenth of each month for premiums ; and failed to furnish $250,000 new insurance during each year.   The reply is a general denial.

Pursuant to the contract the plaintiff opened an office in St. Louis, hired and kept a clerk, and transacted business until the twenty-seventh of February, 1882.   The company refused to send to plaintiff the collections for February, and on the last-named date placed Mr. Manning in possession of the business, saying in a letter dated the twenty-second of February and addressed to plaintiff :   " It has been about a year and a half since the company re-entered the state of Missouri for the purpose of doing business under a contract with you, which stipulates certain duties which you have failed to perform, and which very much prejudice the company's interests.   You have not worked the territory as required by the terms of your contract.   You have not devoted your time exclusively to the business as it required.   The company concludes, in view of the situation, and your admission that you cannot obtain business at the rates which the contract allows, that it will change the contract as per the provisions made in it, and, therefore, request of you to deliver over to George W. Manning," etc.

The other evidence disclosed in the present record shows that plaintiff engaged thirteen agents to canvass the state, some of whom had been before engaged in the insurance business.   He says these agents were employed from December, 1880, to August, 1881, but it does not appear that he had any agents employed, other than his clerk, after that date.   From the date of the contract to October, 1881, he procured new insurance to the amount of about $30,000, but he procured no new insurance after that date.

In December, 1881, the company demanded the seventy-five cents on each $1,000 of the difference between the insurance procured for the first year and the $250,000, agreed to be furnished. The plaintiff remitted the amount demanded, namely, $172.50, which was received by the company about the first of January, 1882, which was before the defendant canceled the contract.

The evidence shows that plaintiff was extremely negligent in making reports and remitting moneys received, and that defendant made constant complaints and threats on account of this neglect. From July, 1881, to October of that year he made no reports or remittances, but, on the twentieth of that month he reported and remitted for previous months. At the time the defendant placed the business in the hands of Manning, the twenty-seventh of February, 1881, there was $846.08 due on the January account.

Plaintiff says he retained this amount after consultation with his attorney and because of anticipated trouble with the company. The above amount constitutes a part of the amount acknowledged to be in his hands by the petition.

In March, 1881, the plaintiff, without the consent of the company, went to New York to assist a friend in some business matters and remained there about one week. Of this absence the company complained when informed of it by plaintiff. For services on this trip he subsequently received $500 or $600. During the period of his agency he also transacted some business by way of correspondence for Mr. Parsons, and for which he received $600. He was also the secretary of the Humane Society which held meetings monthly, but daily reports were made to plaintiff's clerk. He also engaged in the purchase of policies of insurance in the Globe Insurance Company which was in liquidation. These transactions in Globe policies were made through a Mr. Wilson, who says, in purchasing the eight or ten policies, he endeavored, by the direction of the plaintiff, to get the parties

to take new policies in the defendant company, but his endeavor in this respect was a complete failure.

The foregoing evidence was elicited from the plaintiff and his witnesses and shown by documents and correspondence identified by the plaintiff.

1.   The trial court did not err in holding that the failure of the plaintiff to furnish $250,000 of new insurance during the first year constituted no breach of the contract.   The contract does, it is true, require the plaintiff to furnish that amount of new insurance each year during a period of four years from the date of the contract; but it provides in express terms what the penalty shall be for a failure to comply with the stipulation, namely, he must pay seventy-five cents for each $1,000 which he lacks in the specified amount.   Other stipulations show that, though he may not furnish that amount each year, the contract was to continue; for it goes on to say that, if he obtains $1,000,000 of insurance during the four years, then the company will return what he had paid because of a failure to furnish the required amount.   This means and can only mean that should he fail to furnish the $250,000 in any year and should pay the penalty and in the four years should furnish $1,000,000 of insurance, then the penalty paid shall be refunded.   The plaintiff failed to furnish the specified amount for the first year, but he paid the penalty when demanded, and that payment satisfied the terms of the contract.

The important question in this case is whether the plaintiff should have been nonsuited on his own evidence.   By the contract he agreed "to devote his entire time and energy to the business of said company and to no other, and employ a sufficient number of agents to canvass the territory named and see that the company is represented therein by efficient active agents."

That the plaintiff absented himself from his post of duty for a month and a half in July and August, 1881, neglecting to make reports or remittances, is a conceded

Ehrlich v. The Ætna Life Ins. Co.

fact.   When this case was here before we were of the opinion that such absence and neglect, unexplained, constituted a breach of the contract.  We were then, and are still, of the opinion that a reasonable interpretation should be given to the contract ; that the plaintiff had the usual hours for rest, recreation and pleasure ; that he could not engage in any other business to the prejudice of defendant, and that he was bound to give his time and energies to the defendant's business with that degree of diligence and attention which is usual among industrious business men engaged in a like business, and that the usage of such men qualifies the agency.   The plaintiff, to excuse his absence from business, produced on this trial considerable evidence as to the habits and practice of other agents.   This evidence shows that most of the insurance agents in St. Louis take a summer vacation, but for no defined length of time ; that like other persons they take such a rest and recreation when their means and business permit them so to do. A custom, to be a fixed element of a contract, must be certain, settled and uniform.   *Ober v. Carson's Ex'r*, 62 Mo. 209.

No such custom is disclosed by the evidence in this case.   It cannot be said on any view of the evidence, that the plaintiff had the absolute right to leave his business for a month and a half ; still the fact that good business men do take summer vacations for a greater or less length of time is a fact to be considered with the other evidence.   Here the plaintiff had charge of a large new agency calling for constant attention, his business was lagging and this he well knew, and he left the state for a month and a half, and from July to October no reports or remittances were made to defendant.

Besides this the contract requires the plaintiff to " account to said company on or before the tenth day of each month  *  *  *  for all premiums received by him, or his agents, and remit the amount of the same," etc.   That the plaintiff, in the face of complaints made

by the company, repeatedly failed to comply with this provision of the contract is shown beyond all question. Such failures continued up to the day of his removal; for it is clear that the $846.03 belonged to the January collections, and it should have been remitted at least by the tenth of February, which was some seventeen days before the business was placed in the hands of Manning.

But it is suggested on behalf of the plaintiff that the company did not remove the plaintiff because of his failure to make reports and remittances. The letter delivered to the plaintiff when he was displaced does not give that as a ground for the removal, but the answer set up this as one of the breaches of the contract by the plaintiff, and the breach is proved beyond all question, and there is no plea that the company waived the breach. The letter might be some evidence of such a waiver, though weak, when taken in connection with the fact that the company made constant complaints to plaintiff of his failure to comply with this provision of the contract. The general allegation of performance in the plaintiff's petition will not lay a foundation for the admission of evidence constituting an excuse for non-performance of the contract declared upon. Bliss on Code Plead. [2 Ed.] sec. 302. To make an issue of waiver of the breach alleged in the answer, waiver should have been pleaded in the reply. This was not done, and there is, therefore, no issue of waiver in this case.

Laying out of consideration the evidence concerning plaintiff's connection with the Humane Society, his trip to New York and business done by way of correspondence for Mr. Parsons, the following matters still stand out in bold relief: He absented himself, without leave, from his post of duty for a month and a half, when the business was on the decrease and demanded his attention. He repeatedly failed to make reports and remittances according to the plain terms of his agreement. These are facts about which there can be no dispute and

are disclosed by his own evidence, and in our opinion they furnished a good and sufficient reason for the company to exercise the right reserved to terminate the contract. The company undertook to protect itself and policy-holders by a stringent contract and is entitled to have that contract enforced. The court, on the plaintiff's own evidence and the correspondence, should have directed a nonsuit, and the judgment is, therefore, reversed without remanding the cause. BRACE, J., absent; the other judges concur.