ISAAC JOSEPH, Appellant, v. THE ANDREWS COMPANY, Respondent.

St. Louis Court of Appeals, December 21, 1897; On Motion for Rehearing.

1. **Contract of Sale:** DELIVERY: UNCERTAIN CUSTOM. In a suit for the difference in sales of old iron rails sold and delivered to defendant under a contract of sale, refused by it, and resold at a loss, where no time of delivery was specified in the contract, and the defense was delay in shipment of the rails, the delivery was of the essence of the contract, and a custom, as to the delivery of such rails, uncertain as to the time of delivery, was not such a custom as the law recognizes. *Ehrlich v. Ins. Co.*, 103 Mo. 231.

2. **Delivery:** REASONABLE TIME: JURY QUESTION. Whether the rails in question were delivered within a reasonable time, was a question of fact for the jury under the evidence.

3. **Usage:** EVIDENCE: COMPETENCY. Where an alleged usage, if proven and shown to be known to both parties who contracted with reference to it, would materially aid in determining the condition of the contract as to delivery, and would be a material element in estimating what would be reasonable time for delivery, it was error to exclude evidence of such usage and such other facts as were necessary to show that the contract should be interpreted in the light of the alleged usage.

*Appeal·from the St. Louis City Circuit Court.*—Hon.
Daniel Dillon, Judge.

Reversed and remanded; Judge Bond concurring,
Judge Biggs absent.

*Nathan Frank* and *Seymour D. Thompson* for
appellant.

*W. B. Homer* for respondent.

### ON MOTION FOR REHEARING.

Bland, P. J.—We adopted the following state-
ment of the case of the principal facts from the original
opinion of Judge Biggs, filed in the case: "The plain-
tiff's place of business is in the city of Cincinnati, in
the state of Ohio. He is engaged in buying and sell-
ing old iron rails. The defendant corporation is en-
gaged in the same business in Youngstown in the same
state. On the twenty-first of September, 1895, the
plaintiff sold to the defendant between two and three
hundred tons of old iron rails at $19.50 per ton. The
time of delivery was not specified. The contract is
evidenced by letters and telegrams, concerning which
there is no dispute. The plaintiff made the first ship-
ment on the seventeenth day of October, following.
On the same day the defendant notified him that it had
elected to withdraw from the contract on account of
delay in making the shipment. When the goods ar-
rived in Youngstown, the defendant refused to receive
them. The plaintiff resold them at a loss. In the
present action the plaintiff sues for the difference be-
tween the two sales. The petition contained the aver-
ment that under a general custom of the trade the
plaintiff had thirty days after the communication of

the sale within which to make the delivery, as the contract specified no particular date.

The answer is a general denial. On the trial of the cause before a jury the plaintiff introduced evidence which tended to prove that in the sale of old iron rails it was the general custom of the trade throughout the country that the seller had from thirty to sixty days to make the delivery, provided there was no special agreement on the subject. The evidence for the plaintiff also tended to show that dealers in old iron rails were not in the habit of rehandling them, that is, shipping them from the lines of railroads where purchased, to their yards, but it was their custom to ship them direct to purchasers. Following up this line of inquiry the plaintiff offered to show at what place the rails in controversy were situated, and their condition for shipment. This was for the purpose of showing (aside from the custom) that the delivery as made was in fact within a reasonable time after the sale. The court held the evidence to be incompetent for the reason that under the contract the conclusive presumption was that plaintiff had the rails on hand at his place of business in Cincinnati and ready to load on cars for shipment. The evidence introduced by the defendant tended to contradict that of the plaintiff as to the evidence of the alleged custom. The jury found the issues for the defendant and judgment was entered accordingly. The plaintiff has appealed and complains of the instructions given at the instance of the defendant, and also of the rulings of the court as to the admission and rejection of evidence."

At the instance of the defendant the court instructed the jury as follows:

"1. The court instructs the jury that before they can find that a custom or usage exists, by which the plaintiff under the contract might deliver the rails in

question at any time within thirty days after the purchase, they must believe that such custom was general—that is, that it was a usage or custom acted upon by substantially all parties buying old rails; and that the said custom was certain—*that is, that it was clear as to the number of days to which a party would be entitled to wait before making the delivery;* and further, that the custom has been so long and well established that all parties buying old rails may be presumed to have known the existence of such custom; and if the jury find that there is no well settled custom, *but that one dealer delivers at one time, and another at another time,* or that such custom is confined to a certain class of brokers, or junk dealers, or that it is not universally and generally accepted among those purchasing old rails, then they will find that there was no custom binding upon the defendant in this case.

"2. The court instructs the jury that if the jury find, under the evidence and the other instructions, that on or about September 21, 1895, there was no custom or usage as to the time of delivery of old iron rails when no time of delivery is stated in contract of sale, as indicated in instruction marked "A,"—then the court instructs the jury that under the law the plaintiff had a reasonable time to deliver the old rails in question after such contract was made; and if they find that the plaintiff did not deliver or tender delivery of such rails within a reasonable time, they will find the verdict for the defendant in this case; and the jury are instructed that in order to determine what was a reasonable time, they will take into consideration the understanding of the parties, as shown by the correspondence at the time the contract was made, the time necessarily occupied in loading the same upon the cars, the distance which the same were to be transported,

*and the time usually occupied in transporting such goods from Cincinnati to Youngstown.*

"3. The court instructs the jury that it is the meaning of the contract, entered into between the parties in this case, that the plaintiff had the old rails on hand and was ready to ship the same to the defendant." (The italics are ours.)

The contention of the plaintiff upon the trial was that the delivery of the old iron rails was made according to an established custom, or that the delivery was made within a reasonable time, reference

CONTRACT of
sale: delivery:
uncertain cus-
tom.

being had to the nature and conditions of the contract. There was evidence tending to prove that the custom of the trade was to deliver old iron rails in three to four weeks, thirty to forty-five and thirty to sixty days. Delivery in a contract of this kind is of the essence of the contract, and a custom which is as uncertain as to the time of delivery, as testified to by the plaintiff's witnesses, is not such a custom as the law recognizes; it is not certain and uniform, and therefore lacks these essential elements of a lawful custom. *Ehrlich v. Ins. Co.*, 103 Mo. 231. The plea that the rails had been delivered according to an established custom of the trade was not made out by the evidence, for the reason that the custom was not proven. As to whether the rails were delivered within a reasonable time, was a question of

DELIVERY:
reasonable time:
jury question.

fact to be determined by the jury, under the evidence. Some confusion seems to have arisen on the trial by confounding usage with custom; usage is the evidence of custom, and long continued usage will ripen into an established custom. There may be a usage, however, among merchants that has not acquired the dignity of an established custom, not being generally known and uniformly observed; merchants have a style peculiar

to themselves in making mercantile contracts, and courts of law will hear the evidence as to any usage regarding such contracts, in order to ascertain the intention of the parties, and to give a correct interpretation to their contracts. Broom's Legal Maxims, side page 889. *Wolff v. Campbell*, 110 Mo. 114; *Kimball v. Browmner*, 47 Mo. 398; *Long v. Armsby*, 43 Mo. App. 253.

Appellant introduced some evidence and offered some more, which was excluded, to which he duly excepted, that there was a usage in the old iron rail trade to the effect that when a broker sold rails it was known that he did not have the rails on hand at a particular place, but to avoid the expense of reloading, the rails were in the yards of the railroad from whom bought, or to be bought, and would be shipped from such yards to the seller. Such a usage, if proven, and proven to have been known to both parties to the contract, would very materially aid in ascertaining the condition of the contract as to the delivery of the rails, and would be a material element in estimating what would be a reasonable time for delivery, and if the contract was made with reference to the usage, then the presumption of law that the appellant had rails on hand at Cincinnati ready for delivery would be removed. We think the court erred in excluding the testimony of the alleged usage. The appellant should have been permitted to prove the usage and to prove such other facts as were necessary to show that the contract should be interpreted in the light of the usage. For this error the judgment is reversed and the cause remanded. Judge BOND concurs; Judge BIGGS absent.