OTTUMWA BRIDGE COMPANY v. BERNARD CORRIGAN and CORRIGAN REALTY COMPANY, Appellants.

Division One, June 28, 1913.

1. **BILL OF EXCEPTIONS: Filed After Expiration of Leave.** Section 1, p. 139, Laws 1911, repealing Sec. 2029, R. S. 1909, which governs the time for filing bills of exceptions, does not create a right to file a bill of exceptions in a case where leave to file had expired before the new section went into effect.

2. **CONTRACTS: Time of Performance: Not of Essence: Pleading.** Plaintiffs contracted to furnish and erect the steel for defendants' large hotel building. The contract provided, that,

if there appeared errors or inconsistencies in the specifications, plaintiff should refer the matter to the architect; that in case of lack of clearness he should call for detail drawings; that the owner agreed to have the site prepared by a certain date; that the complete erection of the steel work should be done and finished October 10, 1907, any delays caused by the progress of brick work to be added to that time. Plaintiff sues now for payment of balance on contract price, alleging performance by November 21, 1907. Defendants answer that, without fault on their part, the steel work was not finished until after the date set, and they seek by counterclaim to recover rental which they say they lost by such failure. Plaintiff replied that the delay was due to the acts of the defendants and to delay in brick work, and that the defendants agreed for a valuable consideration to waive all damages for failure to complete the erection by October 10. *Held*, that time was not of the essence of the contract; that plaintiff's petition states a cause of action even though it shows performance was not completed until November 21; and that plaintiff's reply is not a departure.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*Yates & Mastin, Atwood & Hill* and *Reed & Harvey* for appellants.

(1) Where one sues on a written contract, alleging exact and specific performance with its every condition, as here, he may not abandon his cause of action in his reply, nor can he recover on an alleged waiver of the contract provisions, which he says he has kept when such issue is first tendered therein. The plea of waiver is inconsistent with the allegation of performance nor can such allegation in the reply, cure the defect in the petition. It is so held in a case exactly on all-fours with the case at bar. Mohney v. Reed, 40 Mo. App. 99. This case is expressly approved by the Supreme Court in Moss v. Fitch, 212 Mo. 503. "Where plaintiff sues on a written contract to enforce specific performance thereof, he cannot recover on averments in his reply of an alleged estoppel, which constitute

a departure." Hill v. Coal & Mining Co., 119 Mo. 9; Ham v. Railroad, 149 Mo. App. 200. (2) It is conceded that respondent did not keep the terms of the contract sued on. This the uncontradicted evidence shows. Moreover the uncontradicted evidence shows that respondent did not keep the contract as modified by the parol agreement of October 8, 1907. The verdict finds that respondent did not keep the modified or substituted contract; for that damages are allowed to appellant by the verdict in the substantial sum of $3000, thus placing the matter within the pale of demonstration. Recovery may not be had upon contract and for contract price where admittedly the contract has not been kept. The remedy is in *quantum meruit*. Marsh v. Richards, 29 Mo. 99; Donney v. Burke, 23 Mo. 228; Eyerman v. Cemetery Assn., 61 Mo. 491; Keith v. Ridge, 146 Mo. 97; Dermott v. Jones, 63 U. S. 262; McVoy v. Wheeler, 6 Port. (Ala.) 201; Harrison v. Franklin, 126 Mo. App. 376. This has been the law in Missouri since 1835. Helm v. Wilson, 4 Mo. 41; Raymond v. Fisher, 6 Mo. 36. (3) "The effect of an extension of or waiver of time for performance is merely to substitute a new time for the old. It does not affect the other provisions of the contract and when the agreement for extension or waiver is silent as to the duration of the extension the law implies that it shall be for a reasonable time." 30 Am. & Eng. Ency. Law, p. 1260. And it is only when the agreement is silent as to time that law implies a reasonable time.

*Reed & Reed* for respondent.

(1) At the conference on October 8th the parties merely made provision for subletting the contract for the steel for the top two stories, and in no wise made any new agreement regarding the date for com-

pletion of the entire steel structure or the delivery of the remaining steel. The lifting from the contract of the provision requiring completion on October 10, 1907, resulted, not by reason of any new agreement to that effect, but solely as a matter of law, which, under the circumstances, thereupon implied that the erection should be completed, not on November 10, 1907, but within a reasonable time after October 8, 1907. Hart v. Carswell Mfg. Co., 116 Ill. App. 159; Smith v. Sanitary, etc., of Chicago, 108 Ill. App. 69; 30 Am. & Eng. Ency. Law (2 Ed.), p. 1259; Cornish v. Sudam, 99 Ala. 621; 2 Woodward (Pa.), 332; Andrews v. Tucker, 127 Ala. 602; Bishop on Contracts (Ed. 1887), sec. 795; Ward v. Haren, 139 Mo. App. 8; Water Co. v. Pierce City, 61 Mo. App. 471. (2) The abrogation of the time provision in the contract, instead of resulting from any express agreement, was effectively accomplished by the conduct of the defendant in continually urging the plaintiff to proceed; maintaining a superintendent over the erection; continuing to make payments on the contract price, and the acceptance of the work when completed. Thereupon the contract provision as to time of performance was eliminated as completely as if it had never been inserted. Construction Co. v. Seymour, 91 U. S. 646; Kraus v. School Trustees, 162 Ind. 278; Crocker-Wheeler v. Varick Co., 104 N. Y. App. 568; Eysler v. Parrott, 83 Ill. 517; McIntire v. Barnes, 4 Colo. 285; Cannon v. Wildman, 28 Conn. 472; Grant & Co. v. Railroad, 51 Ga. 348; Dunn v. Steubling, 120 N. Y. 232; Grannis v. Deeves, 72 Hun, 171; Fowlds v. Evans, 52 Minn. 560; Sinclair v. Talmadge, 35 Barb. 602; Bridge Co. v. Stewart, 134 Mo. App. 618; Burchard v. Alpha Process Co., 45 Pa. Sup. Ct. 254; Deeves & Son v. Manhattan Co., 195 N. Y. 330; Supply Co. v. Goelet, 133 N. Y. Supp. 983; Oil Co. v. McCaw Mfg. Co., 70 S. E. 201; Wall v. Storage Co., 112 Mo. App. 659. (3) The reply did not constitute a departure

nor contain any new matter inconsistent with the cause
of action set forth in the petition, but merely presented
plaintiff's defense in response to defendant's coun-
terclaim. Coombs v. Block, 130 Mo. 680; Simpson v.
Bantley, 142 Mo. App. 495; Milling Co. v. Allen, 74
Kan. 679; Bliss on Code Pleading (3 Ed.), sec. 396;
1 Chitty on Pleading (16 Ed.), p. 678; Chemical Co.
v. Lackawana Line, 70 Mo. App. 274; Philibert v.
Burch, 4 Mo. App. 470; Loucks v. Davies, 43 Colo.
490; Erickson v. McLellan, 46 Wash. 661; Water Co.
v. Pierce City, 61 Mo. App. 471; Heating Co. v. Bis-
sell, 41 Mo. App. 426; Ehrlich v. Aetna Co., 103 Mo.
231; Rhodes v. Land & L. Co., 105 Mo. App. 313; Mc-
Lachlin v. Barber, 64 Mo. App. 511; Ricketts v. Hart,
73 Mo. App. 647; Booker v. Allen, 158 Mo. 613;
Manf'g Co. v. Heinz, 120 Mo. App. 465; Bridge Co.
v. Stewart, 134 Mo. App. 618; Anderson v. Imhoff,
34 Neb. 335; Baptist Church v. Sigwald, 39 Kan. 387;
St. Paul Co. v. Furn. Co., 23 Okla. 79; Wey v. Bank,
29 Okla. 943; Cement Co. v. Ullman, 140 S. W. (Mo.)
620; Manzki v. Goldenburg, 149 Mo. App. 14; Loftis
v. Pacific Co., 114 Pac. (Utah) 134; Low v. Keens,
133 N. W. (Neb.) 1127; Eddleman v. Lentz, 72 S. E.
(N. C.) 1011. (4) This action was properly founded
on the contract rather than upon *quantum meruit.*
Crocker-Wheeler v. Varick Co., 104 N. Y. App. 568;
McIntire v. Barnes, 4 Colo. 285; Grannis v. Deeves, 72
Hun, 171; Reading Hdw. Co. v. Pierce, 113 N. Y. Supp.
331; Bridge Co. v. St. Louis, 43 Fed. 768; Pratt v.
Forge Co., 184 Fed. 289. (5) Time was not made
of the essence of the contract, and by consent of both
parties and by the conduct of defendant's *inter alia*
in requiring the subletting of a part of the work, the
time of performance became merely an obligation to
complete within a reasonable time. Manufacturing
Co. v. Heinz, 120 Mo. App. 465; Heating Co. v. Bissell,
41 Mo. App. 426; Turner v. Mellier, 59 Mo. 526; Saw-
yer v. Christian, 40 Mo. App. 295; Springfield Co. v.

Walt, 94 Mo. App. 76; O'Neill v. Webb, 78 Mo. App. 1; Bagwell v. Am. Surety Co., 102 Mo. App. 707; Crocker-Wheeler v. Varick Co., 104 N. Y. App. 568; Dunn v. Steubling, 120 N. Y. 232; Fowlds v. Evans, 52 Minn. 560; Daly v. Carthage, 143 Mo. App. 564; Carroll v. Hassell, 143 S. W. 835; Wall v. Storage Co., 112 Mo. App. 659. (6) The bill of exceptions contained in the record should be stricken out and disregarded by this court, because not filed within the time required by law. Hewitt v. Colo. Springs Co., 5 Colo. 184; Mellinger v. Houston, 68 Tex. 36.

BROWN, C.—The petition, so far as is necessary to understand the questions presented in this appeal, is as follows:

"That on or about May 11, 1907, the defendant, Bernard Corrigan, acting for himself personally and also as the agent and representative of The Corrigan Realty Company, made and entered into a contract with the plaintiff, whereby said Bernard Corrigan, for himself personally and as the agent of said The Corrigan Realty Company employed and engaged the plaintiff, Ottumwa Bridge Company, to furnish and erect for the said Bernard Corrigan and the said Corrigan Realty Company certain steel, iron and other building material, and to perform certain labor in and about the erection and construction of an addition to the Baltimore Hotel, a building situated on Baltimore avenue between Eleventh and Twelfth streets in Kansas City, Missouri, which said contract was in writing, a full and true copy of which is as follows, to-wit:"

*Contracts.*

Then follows a specification of cast iron bases and steel construction work entering into an addition to the Hotel Baltimore, Kansas City, Mo., the addition being a hotel structure 75x117 feet, of eleven stories and basement, together with an extension of the eleventh and twelfth stories over the existing building,

approximately 42x116 feet. It provides among other things:

"Should the drawings and specifications appear to be mutually contradictory in any part, or should there be apparent errors in either, or in the figures on the drawings, the contractor must not attempt to adjust the same himself, but must refer the matter to the architect for his adjustment. All figures shown on drawings shall be checked by contractor before executing work, to the end that all work shall be reconciled within itself and to adjoining work and trades.

"Should there be any portion or detail of the work not fully shown on the drawings or shown insufficiently clear *for the proper execution* of the work in a thoroughly first class manner, the *contractor must call for detail drawings of the same or specific instructions,* and such work executed without details or specific instructions and not fully satisfactory to the architect, will be taken down and replaced at the contractor's expense."

The time for completion of the work is stated as follows:

"The owner agrees to have the excavation done and concrete beds prepared for the reception of cast iron plates on or before July 15, 1907, at which time the cast iron bases will be delivered on the ground and shall be set by July 25th. The complete erection of the steel work shall be done and finished October 10, 1907, and shall progress as nearly as practicable according to the limiting horizontal lines on column sheet No. 11 relating to top levels of floor construction. Any delays caused by the progress of brick work shall be taken into consideration and an equal time to such delay shall be added to the above date of October 10, 1907."

The following proposal and acceptance, written on the specifications, are pleaded as the contract.

251 Mo.—43.

"Ottumwa, Ia., May 11, 1907.
"Mr. Bernard Corrigan,
              Kansas City, Mo.

"We hereby propose to deliver and erect the steel and cast iron work entering into the Baltimore Hotel, per drawing therefor prepared by Louis Curtiss, architect, and numbered 1 to 11 (identified with this proposal by our signature) and per the foregoing specifications including all clauses, stipulations and descriptions of labor and material contained therein, and according to the schedule of time noted on sheet 11, for the sum of sixty-seven dollars per ton of two thousand pounds.

"The above proposition is based upon our statement that ninety per cent of the steel involved is now in stock in our yards and shall enter into the above work.

                              "OTTUMWA BRIDGE Co.
                              By John Dittmann.
              "Kansas City, Mo., May 11, 1907.
 "I hereby accept the above proposition.
                              BERNARD CORRIGAN."

 The petition then proceeds:


"4th. That in compliance with the terms of said contract the plaintiff undertook the performance of said contract, and did furnish the material and perform the labor and services, and do each and every of the several things required by said contract, and in that behalf did furnish and erect in said addition to said Baltimore Hotel 665.8895 tons of iron and steel, furnishing, delivering and erecting the same at the dates and in the amounts as follows:"

It then sets out nineteen items aggregating about three hundred and eighty-three and a half tons from July 15th to October 8, 1907, inclusive; thirteen items aggregating about two hundred and seventy-three tons from October 12th to November 6th, and the re-

mainder in three small lots—one November 7th and the other two on November 21st, and concludes:

"5th. That the aggregate amount of the said steel and iron at sixty-seven dollars per ton, as per contract, was the sum of $44,614.59.

"6th. That the defendants, on their part, and as payment to apply on said contract, paid to the plaintiff the sum of $31,016.13.

"7th. That the remainder of said contract, to-wit, the sum of $13,598.46, became due and owing to the plaintiff about the first day of December, 1907, and the plaintiff then and at numerous. times since said date has requested the defendants to pay said sum, but the said defendants had failed, neglected and refused, and still fail and refuse to pay said remainder of said account or any part thereof, and there now remains due to the plaintiff said sum of $13,598.46 with interest thereon at the rate of six per cent per annum from December 1, 1907.

"Wherefore plaintiff prays judgment against said Bernard Corrigan and the Corrigan Realty Company for the sum of $13,598.46 with interest at six per cent per annum from December 1, 1907, and the cost of this action."

The defendants interposed a general demurrer to the petition, which was overruled by the court. It then filed its answer, which, so far as it relates to questions here in this appeal, is as follows:

"III. That on or about the 11th day of May, 1907, the defendant, Bernard Corrigan, acting for himself and also as agent of the Corrigan Realty Company, made and entered into the contract with the plaintiff which is set out in haec verba in the third clause of the plaintiff's petition, and defendants further aver that the clause and agreement therein contained to the effect that the plaintiff had on hand at the date of the execution of said contract, to-wit, May 11, 1907, ninety

per cent of the steel to be furnished in accordance with said contract, in the plaintiff's yards and ready for delivery and the further agreement and covenant so contained in said written contract whereby plaintiff bound itself to complete the erection of all steel work in a finished condition by October 10, 1907, were in-ducements to and conditions precedent for the making of said contract with plaintiff by defendants.

"IV. Defendants expressly deny that the plaintiff furnished the material and performed the labor and services required by the terms and conditions of the contract sued on and set out in the plaintiff's petition, and deny that the plaintiff did each and every one of the several things required by said contract, deny that the plaintiff ever at any time erected or furnished the quantity or amount of steel specified in the plaintiff's petition, but to the contrary aver that the quantity of steel furnished defendants and erected in the building mentioned in the petition was 643.69 tons; amounting in price, at the rate mentioned in said contract, to-wit: sixty-seven dollars per ton, to the sum of $43,127.23, and defendants further deny that said steel was erected at the dates or by the times set forth in the fourth paragraph of the plaintiff's petition as is therein alleged, but to the contrary aver that during all of the months mentioned in said paragraph of the plaintiff's petition plaintiff was in default in the timely erection of the steel work required to be erected by plaintiff under the terms and conditions of the contract referred to, and defendants further aver that the plaintiff failed to build and did not complete the erection of said steel work, which plaintiff agreed should be done and finished by the 10th day of October, 1907, until the 28th day of January, 1908. Defendants further aver that none of the delays of the plaintiff in the erection and completion of

said steel work was caused or occasioned by any act or omission or neglect of the defendants.''

''V. Defendants further aver that they have paid to the plaintiff from time to time on the said contract the total sum of $31,445.63, that the total sum due plaintiff, had plaintiff kept and performed the terms and conditions of the contract so entered into by and between plaintiff and defendants as aforesaid, which defendants expressly deny, would be the sum of $11,681.60 and not the sum of $13,598.46 as averred in the plaintiff's petition, but defendants say that the plaintiff ought not to have and recover a judgment against defendants in any sum whatever for that the failure of the plaintiff to keep and perform the terms and conditions of said written contract in furnishing and erecting said steel work by the date therein mentioned, to-wit, October 10, 1907, resulted to the great damage of the defendants in this—that the building of which the steel work mentioned in said contract was a constituent part, was being erected by the defendants for the use of the Baltimore Hotel Company, a corporation, and had theretofore been rented by these defendants to said company at and for the price and sum as rental of five thousand dollars per month, as plaintiff well knew; that by reason of the failure of the plaintiff to keep the terms and conditions of said contract and to furnish, erect and complete said steel work by the time limit mentioned in said contract, to-wit, October 10, 1907, and by reason of the failure of plaintiff to furnish, erect and complete the same until January 28, 1908, the defendants lost as rental on said building and were damaged by reason thereof, the total sum of $17,832.00, for which sum the defendants say they are entitled to a judgment against the plaintiff with six per cent interest thereon from the 28th day of January, 1908, for which defendants pray, together with their costs in this behalf expended.

"Further answering defendants deny each and every allegation in the plaintiff's petition contained not hereinbefore admitted, and having fully answered ask to go hence with their costs.

"Count II. Come now the defendants and by way of counterclaim to the plaintiff's cause of action set forth in their petition, and as and for the defendant's cause of action against the plaintiff, defendants aver: . . .

"III. That on or about the 11th day of May, 1907, the defendant, Bernard Corrigan, acting for himself, and also as agent of the Corrigan Realty Company, made and entered into a certain written contract with the plaintiff whereby said Bernard Corrigan, for himself and as the agent of the said Corrigan Realty Company, employed and engaged the plaintiff to furnish and erect for the said Bernard Corrigan and the said Corrigan Realty Company certain steel and other building material and perform certain labor in and about the erection of the same and in the construction of an addition to the Baltimore Hotel, a building situated on Baltimore avenue between Eleventh and Twelfth streets in Kansas City, Missouri, which said contract was in writing, a full and exact copy of which is as follows:"

The answer then sets out *in haec verba* the contract as found in plaintiff's petition heretofore. After setting out the contract, the remaining portion of said answer follows:

"Defendants say that at the time said written contract was entered into by and between defendants and plaintiff as aforesaid, the defendants had already rented the said addition to said Baltimore Hotel to the Baltimore Hotel Company, a corporation, as plaintiff well knew, at and for the reasonable rental value thereof which was the sum of five thousand dollars per month, and that defendants were induced to enter into said contract, as plaintiff well knew, because of

the conditions made a part thereof to the effect that all of the materials to be furnished and labor to be performed in the matter of the erection and completion of the steel work mentioned in said contract, were to be furnished and said steel work erected in a finished condition and completed on or before October 10, 1907; and also by reason of the further agreement and guaranty so contained in said contract to the effect that ninety per cent of the steel to be furnished and erected under the requirements of said contract, was on hand and in the yards of the plaintiff ready for shipment and erection, and defendants aver that the plaintiff wholly failed to keep and perform the terms and conditions of the said contract hereinbefore set out, in this, that steel to be furnished under said contract, was not furnished, and the steel work to be erected and completed under said contract was not erected and completed until the 28th day of January, 1908; that the failure of the plaintiff to keep and perform the said contract in the particulars set forth was not occasioned by any fault, delay or neglect of these defendants to do any of the things required to be done by them by the terms and conditions of said contract; that by reason of the failure of the plaintiff in the premises to furnish and complete the erection of said steel work according to the terms and conditions of the said contract, the defendants lost the rent of said addition to said Baltimore Hotel for a period of three months and seventeen days and were actually damaged in the sum of $17,882, for which sum, together with interest at six per cent from the 28th day of January, 1908, defendants pray judgment against the plaintiff, and for costs.''

Plaintiff replied as follows:

''Comes now the plaintiff, and for reply to the amended answer of the defendant denies each and every allegation in said amended answer contained,

except those averments admitted in the petition or in the following reply.

"Plaintiff for further reply to said amended answer avers that if there was any delay in the completion of the plaintiff's contract set forth in the petition, the same was due to and caused solely by the interference, acts and conduct of the defendants and their agents, representatives and subcontractors, and not on account of the default or failure of this plaintiff to promptly comply with its contract.

"Plaintiff for further reply alleges that after October 10, 1907, and while a part of said steel work was yet incomplete, the defendants, through said Bernard Corrigan, expressly agreed that any and all damages for and on account of the failure to complete said erection on October 10, 1907, were to be waived, in consideration of the agreement to expedite said work by going into the market at that time and purchasing additional material needed to complete said work at that time, at a much higher price than said steel material would cost plaintiff if furnished through its own plant.

"Plaintiff avers that in compliance with its said supplemental agreement it did purchase said additional steel at once, and at a much enhanced price, and did complete said contract therewith as promised, and with the express understanding that the defendants waived all claims on account of delay.

"That accordingly defendants after October 10, 1907, and at all times up to the date of completion of said contract, acquiesced in the completion thereof by plaintiff, although after the date when by first agreement it should have been completed, and repeatedly requested plaintiff to complete and speed the completion thereof, and paid to plaintiff many and large sums of money to apply on the erection and cost after the 10th day of October, 1907, and at divers dates.

"Plaintiff further avers that the delay in completion of said contract was caused by the acts of the defendants and their agents and representatives in altering and changing the plans and specification for said steel work, and in the furnishing of drawings and other things to be furnished and performed by defendants or their agents, whereby plaintiff was prevented from proceeding with said work.

"Plaintiff further avers that at least one-half of the delay in the completion of said work was due to the delay in the progress of the brick work as mentioned and provided for in the "time" clause of said contract, and that said additional time was accordingly allowed to plaintiff.

"Plaintiff expressly denies that it had any knowledge or notice that said hotel was rented, or the rental value thereof, or was advised as to when the same was intended to be occupied, or that the structure to be erected by it had any rental value.

"Wherefore, plaintiff having fully replied to defendant's amended answer renews the prayer of its petition."

The cause was tried on these pleadings, and the jury returned the following verdict:

"Kansas City, Missouri, May 14, 1909. We, the jury, find the issues in favor of the plaintiff upon his petition and assess his damages at the sum of thirteen thousand, five hundred and ninety-eight dollars and forty-six cents ($13,598.46) plus interest at the rate of six per cent per annum from the date of January 15, 1908, to May 14, 1909, amounting to ten hundred and eighty-seven dollars and eighty-seven cents ($1,087.87) and further find the issues in favor of the defendants on his counterclaim and assess his damages thereon at the sum of three thousand dollars ($3,000)."

From the judgment entered upon and in accordance with this verdict this appeal was taken after the

filing by defendants and overruling of a motion in arrest of judgment made on the following grounds:

"1. Because the plaintiff was not entitled on the pleadings to recover.

"2. Because the petition does not state facts sufficient to constitute a cause of action against these defendants.

"3. Because the verdict of the jury is not responsive to the issues tendered by the pleadings herein and is insufficient upon which to predicate a judgment."

The defendants, by order of the court, were given until the 8th day of October, 1910, to file bill of exceptions. On June 24, 1911, and without further leave or stipulation, the trial judge signed and the defendants filed a bill of exceptions taken during the trial and to the overruling of their motion for a new trial.

I. The first question that calls for our attention in this case is whether we have before us a bill of exceptions that we are at liberty to consider. The cause was tried and the verdict returned on May 14, 1909, during the April term of the Jackson County Circuit Court. During the October term, 1909, on the 11th day of December, the motions for a new trial and in arrest of judgment were overruled and this appeal granted, and the appellants given leave to file their exceptions on or before the 9th day of April, 1910. On the 23rd day of March, 1910, while the former leave was in force the court for good cause extended the time for filing the bill of exceptions until on or before the 8th day of October, 1910. Nothing further was done until the 24th day of June, 1911, when the bill of exceptions incorporated in this record was signed and sealed by the judge of the trial court and duly filed. In the

*Filing Bill of Exceptions After Expiration of Leave: Act of 1911.*

meantime, that is to say, between the expiration of the leave last given by the court to file the bill of exceptions and the time of its actual signing and filing, the act of the Legislature approved March 13, 1911, went into effect by virtue of its emergency clause, and the question is thus squarely presented as to whether this act applies to those cases in which the right to file a bill of exceptions had expired before its passage and approval.

This precise question was before this court at the October term of the present year and it was determined upon full consideration that the Act of 1911 was not intended to have and did not have the effect to create the right to file a bill of exceptions in those cases where there was no such right in existence at the time of its taking effect. In other words it only operated to extend a right in existence at that time. [Craig v. Railroad, 248 Mo. 270.] We do not think that any beneficial purpose would be served by a reconsideration of the question at this time:

While the act is remedial in its nature, the construction contended for by appellants would inure chiefly if not wholly to the benefit of those who, either deliberately or through negligence, had surrendered the right to have a review of the matters of exception involved, and it does not seem that they have a higher equity than those who, for the same reasons, have failed to take their appeal within the time permitted by law. We still see no reason why, by construction, they should be forced under the wings of the act by permitting it to retroact upon a status already existing by enlarging the scope and effect of the appeal.

There being no bill of exceptions in the case the Act of 1911 by its terms requires the affirmance of the judgment below, "if error do not appear in the record." It thus becomes our duty to examine the rec-

ord proper to ascertain whether it is sufficient to support the judgment.

II.   The appellants contend that the petition does not state a cause of action because, although it pleads generally the performance by plaintiff of all the conditions of the contract, yet it shows upon its face that the work was not finished within the time required by its terms.  It is true that the contract pleaded provides that the work should be done and finished October 10, 1907, while the petition states that it was completed on the twenty-first day of November, 1907, yet it expressly provides that ''any delays caused by the progress of brick work shall be taken into consideration, and an equal time to such delay shall be added to the above date of October 10, 1907.''  Thus the time of completion expressed in the contract was really October 10, 1907, or as soon thereafter as the progress of the brick work would permit according to the rule of computation above stated.   The defendants demurred generally to the petition, and upon the overruling of their demurrer, answered over to the effect that at the time the contract was executed the building had been rented to the Baltimore Hotel Company for a reasonable rental; that a reasonable rental for the addition was $5000 per month; that the defendants were induced to enter into the contract, as plaintiff knew, because of the condition that the steel work was to be completed October 10, 1907, and a guaranty to the effect that ninety per cent of the steel was on hand in plaintiff's yard ready for shipment and erection, that the steel work was not completed until January 28, 1908, and that by reason of such failure to complete the work October 10, 1907, defendants were damaged in the sum of $17,882 for which, with interest, they ask judgment.

*Contracts: Time Not of the Essence: Pleading.*

The plaintiff replied to this (1) by general denial; (2) if there was any delay it was caused solely by the interference, acts and conduct of defendants and not the default or failure of plaintiff; (3) that after October 10, 1907, the defendants agreed to waive all damages for the failure to complete the erection on October 10, 1907, for a valuable consideration stated; (4) that after October 10, 1907, the defendants repeatedly requested the plaintiff to complete and speed the completion of the work, and paid him many and large sums of money to apply on the contract; (5) that the delay was caused by defendants in changing the plans and specifications for the steel work and in furnishing the drawings and other things to be furnished and performed by them by which plaintiff was prevented from proceeding with the work and that at least half of such delay was due to the progress of brick work for which additional time was allowed.

Defendants insist with great earnestness and learning that this reply is a departure from the original cause of action stated in the petition, in as much as it abandons the contract sued on, and sets up a new contract so far as the time of completion is concerned. To permit this judgment to stand, they say, would be virtually to substitute the reply for the petition, which would be an entire subversion of the order of pleading required by the Code. They also say: "Recovery may not be had upon contract and for contract price where it is admitted the contract has not been kept. The remedy is in *quantum meruit*." In view of this contention the sufficiency of the petition standing alone becomes merged in the general question of the sufficiency of the pleadings as a whole to sustain the judgment and we will so consider it.

Contracts consist of two phases which must be blended in one composite structure to be understood.

These are the language used and the thing to which it is applied. By this contract the plaintiff undertook to furnish all the material, consisting of steel in different shapes which were mentioned as beams, channels, angles, plates and rivets, out of which are to be produced the girders, columns, lintels, anchors, plates and other members of an immense hotel structure twelve stories in height, covering an area 75x117 feet. The two upper stories, extending over an adjoining building, add 42x116 feet to its size. This, according to the record, involved the use of nearly 666 tons of steel, which must be fabricated into finished members. at the plaintiff's shop in Ottumwa, Iowa, or other manufacturing establishments where the facilities existed, and from there delivered to the ground where the building was being erected as it was needed or could find storage, and erected so as to progress as nearly as practicable according to horizontal lines relating to top levels of floor construction. All these members were to be fabricated and erected as shown on eleven sheets of detail drawings which accompanied the contract. All these drawings of the architect were required to be examined and figures checked by the contractor, so as to be reconciled with all the other members of steel construction, as well as with the adjoining work of all other trades engaged in the construction of the adjoining members of the building. If any discrepancy or insufficiency of detail should be found in these respects the plaintiff was required to stop his work and call for further detail drawings or specific instructions from the architect representing the owner.

It will be seen that the nature of the work required masons and bricklayers to lay the foundations and prepare the walls for the steel structures at every one of the eleven stages described in the contract, and that the plaintiff must reconcile his construction to the conditions so produced, and also to the conditions in-

dicated upon the plans or by the work of other trades engaged upon the building; and in all cases must await not only their progress, but the pleasure and convenience of the architect in correcting and reconciling the discrepancies which might exist either in the plans, or in the work of others.

We have carefully noted the above features of the contract because of their relation to the first question which naturally presents itself upon the sufficiency of this record: that is to say, whether the time limit of October 10th is an independent agreement, simply entitling the owner to such damages as he might suffer from noncompliance with the contract in that respect, or whether it is, to use the common language of the books, of the essence of the contract; that is to say, a condition precedent without the performance of which no recovery can be had upon it. The point is well presented in this case, for there is no suggestion that the plaintiff violated or failed in the performance of the contract in any respect except in the matter of time. The work was completed, so far as appears or is claimed, in exact accordance with its terms and was accepted by the defendants. To be sure, it is suggested in the answer that there was a guaranty to the effect that ninety per cent of the steel to be furnished and erected under the requiremnts of the contract was on hand and in the yards of the plaintiff ready for shipment and erection. It is sufficient to say of this that there is no such guaranty or representation in the contract. The statement is that ninety per cent of the steel involved was, at the date of the execution of the proposition, in stock in plaintiff's yard and would enter into the work. It was impossible that it should have meant that the material was fabricated into members of the structure ready to erect, because the fabrication could only be done from drawings made from the plans, and as the combined work developed.

We know of no reason why it is not entirely competent for the parties to agree upon the effect of non-compliance with any stipulation of their contract. If in the exercise of this right they agree that time shall be treated as an essential element of performance, there is no reason why the courts should not enforce their clearly expressed intention to that effect. It is otherwise, however, where the contract shows that it was the intention of the parties that time should not be considered of its essence. Sometimes, in the absence of any direct expression upon that subject, the intention of the parties will be presumed from the nature of the contract itself. Thus time will be presumed to be of the essence of the contract when it was known by both parties at the time it was entered into that without a strict performance in that respect it would not accomplish its ultimate object. On the other hand in case of building contracts which provide that one of the parties shall furnish valuable material and labor in the construction of a house on the property of another which is completed in all respects according to contract and accepted and used by the owner as an improvement designed by himself for the benefit of his own premises, it would be rank injustice to permit him to escape payment because it happened to be completed a few days later than the contract requires; and in such cases, unless there is a plainly expressed intention to the contrary, time will not be considered of its essence but will be presumed to have been entered as an independent agreement, on account of which compensation in damages will put the owner in a position as favorable as would strict performance with respect to time. [Beck & Pauli Lithographing Co. v. Milling & Elevator Co., 52 Fed. 700.] In the case cited Judge SANBORN, for the Circuit Court of Appeals of the Eighth Circuit, said: "It is a general principle governing the construction of contracts that stipulations as to the time of

their performance are not necessarily of their essence, unless it clearly appears in the given case from the express stipulations of the contract or the nature of its subject-matter that the parties intended performance within the time fixed in the contract to be a condition precedent to its enforcement, and, where the intention of the parties does not so appear, performance shortly after the time limited on the part of either party will not justify a refusal to perform by the party aggrieved, but his only remedy will be an action or counterclaim for the damages he has sustained from the breach of the stipulation. In the application of this principle to the cases as they have arisen, in the promulgation of the rules naturally deduced from it, and in the assignment of the various cases to the respective classes in which the stipulation as to time of performance is, or is not, deemed of the essence of the contract, the controlling consideration has been, and ought to be, to so decide and classify the cases that unjust penalties may not be inflected, nor unreasonable damages recovered.''

In Pratt v. Forge Co., 184 Fed. 287, the same question was before the Circuit Court of Appeals of the Second Circuit. In that case a contract for installing an extensive heating plant had, with the acquiescence of the defendant, been extended beyond the stipulated date until a few hundred dollars and a week or two would have completed it, when it was repudiated by the defendant. It was contended that the action should not have been brought upon the contract but upon a *quantum meruit.* In answer to this contention the court said:

''The defendant has the plant and has been using it since it was installed; it also has the money it agreed to pay for the plant. The plaintiff has nothing.

"It may as well be conceded at the outset that, in such circumstances, the court is·not inclined to strain unduly the rules of evidence or of pleading to continue a situation so inequitable.

"The principal contention of the defendant is based upon an alleged defect in pleading. It is argued that plaintiff has mistaken its remedy and that instead of suing upon the contract, the action should have been upon a. *quantum meruit*. The authority chiefly relied upon is Dermott v. Jones, 23 How. 220, 16 L. Ed. 442, which arose in 1859 in the District of Columbia and was governed by the rules of common law pleading. The case is a striking illustration of how a simple cause of action may be stifled under the old system of pleading."

In St. Louis Steam-Heating & Ventilating Co. v. Bissell, 41 Mo. App. 426, the same question was the principal one involved and was thus stated in a syllabus:

"The right of recovery for work under a written contract will not be construed to be conditional upon compliance with a stipulation for the completion of the work by a fixed time, unless there is an express agreement to that effect, or unless from a fair construction of the language employed, the nature of the contract and the attendant circumstances, it is apparent that the parties so intended."

The court said: "Time is not usually of the essence of any contract, though it may be made so, in any undertaking, by express agreement. If the parties do not so expressly stipulate, the courts will not attach such a condition, unless, upon a fair construction of the language employed, and from the nature of the contract and the circumstances under which it was made, it is apparent that the parties so intended. [Russell v. Ins. Co., 55 Mo. 585; Higgin v. Railroad, 60 N. Y. 557; Bishop on Contracts, sec. 1347.]"

After quoting from Turner v. Mellier, 59 Mo. 526, the court proceeded to state its conclusion as follows:

"If the heating apparatus in defendant's building was designed for a particular occasion or temporary purpose, and was of no use afterwards, then a failure by the plaintiff to complete it in time for such special use would go to the whole consideration, and the plaintiff would be debarred from its action to recover for the work under the contract. But the very nature of the work destroys the idea that the apparatus was designated by the defendant's testator for a temporary purpose or use. It was intended to be used not for a season, but continually. This necessarily disposes of the question adversely to the defendants."

This contract shows no intention on the part of either party to make the date given for the completion of the work of its essence, in the sense that an action may not be brought upon it for the recovery of the contract price upon completion and acceptance at a later date; and the law will not presume such an intention unless there is something in the nature of the work that makes the completion at that time an element in its permanent value, or the date serves a temporary purpose that is an important inducement to the undertaking. This contract, on the contrary, expressly provides that the given date may be eliminated, and a new and indeterminate one substituted, depending on events within the control of the owner and his agencies, but impossible to determine otherwise than from conditions as they develop in the course of the work of construction. The work of the plaintiff is also subordinate at every step, not only to the progress of the other trades but also to the convenience of the architect who is made the owner's representative. And finally the defendants have elected to treat the time stipulation as an independent one, and seek compensation, not on the theory of an

irreparable or indeterminate injury, but solely as full rental for a completed building from the day fixed for completion.

In those cases in which time is of the essence of the contract either by reason of legal presumptions arising from its nature and general terms, or by being made so by express stipulation, the failure to perform within the time stated may be waived like any other breach (Estel v. Railroad, 56 Mo. 282; Fowlds v. Evans, 52 Minn. 551; Dunn v. Steubing, 120 N. Y. 232) and under our system of pleading, whenever the answer pleads the breach affirmatively, such waiver may be—and should be—pleaded in the reply. [Ehrlich v. Insurance Co., 103 Mo. 231; Pierce City Water Co. v. Pierce City, 61 Mo. App. 471; Coombs v. Block, 130 Mo. 668; Estel v. Railroad, 56 Mo. 282.] In this case the time of completion not being of the essence of the contract, it was sufficient to show, under the general allegation of performance, that all its other stipulations were fully performed, and the work completed and accepted. But while it was unnecessary to a recovery upon the contract that the work should have been completed upon the day named the defendants were entitled to damages for a breach of that provision and presented their counterclaim to recover them in this suit. This presented for the first time the issue of a breach of the time provision of the contract and the plaintiff met it, as it had the right to do, by an attempt to justify its course in the reply.

We have been favored with a most interesting and instructive argument upon the questions of pleading which would arise out of the waiver of strict performance of the time stipulation, provided the doctrine were applicable to this case. We have seen however, that the broken stipulation is not of the essence of the contract, and therefore not a condition to the maintenance of the action on it, so that there has been nothing to waive. The defendant, in his counterclaim

for damages, has followed the well beaten path blazed by the law under our own code as well as similar ones in other jurisdictions. The verdict of the jury is responsive to the issues so made, and sufficient to support the judgment. Were we to accept the invitation of the defendants, and examine once more the question of the proper time and manner of pleading the waiver of conditions precedent to a recovery in actions upon contracts of this character our opinion would add nothing to the weight of the authorities already incidentally cited in, this opinion which refer to that subject. The judgment of the circuit court is affirmed.

*Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.