EDWARD WARD, Respondent, v. WILLIAM A. HAREN, Appellant.

St. Louis Court of Appeals, May 25, 1909.

1. **CONTRACTS: Building Contracts: Time Limit: Waiver.** Where a building contract provides for a forfeiture of a certain amount of money for each day the completion of the work is delayed beyond a given time, and the owner orders additional work, besides that provided in the specifications, which work the contractor cannot refuse to do under the terms of the contract, and such additional work causes delay, the act of the owner in thus ordering additional work operates to waive the stipulation as to the time within which the building shall be completed, to the extent that such additional work caused delay.

2. ——: ——: ——: **Reasonable Time.** In such case, where the time limit is thus waived by the act of the owner, the contractor is under obligation to complete the building, extra work included, within a reasonable time.

3. ——: ——: ——. Where a building contract provided that if the work should be delayed by the act of the owner the time for completion of the contract would be extended for a period equivalent to the time so lost, but that no such allowance should be made unless a claim therefor was presented in writing within forty-eight hours of the occurrence of such delay, and where the owner ordered extra work which caused delay in completion of the building, but the contractor failed to present his claim in writing as provided, he was liable to the owner for a forfeiture provided in the contract in the case of delay beyond a given time; the claim of a waiver in writing was a condition precedent to the contractor's right to the same.

Appeal from the St. Louis City Circuit Court.—*Hon. Moses N. Sale, Judge.*

REVERSED.

*Kehr & Tittmann* for appellant.

*Holmes, Blair & Koerner* for respondent.

Defendant cannot claim penalties for plaintiff's not completing the building within the time specified in the contract, when such failure of plaintiff was not due to any fault or neglect of plaintiff, but was caused by defendant ordering tile to be substituted for corrugated iron. Van Buren v. Diggs, 11 How. (U. S.), 461; Palmer v. Stockwell, 9 Gray 237; O'Keefe v. St. Francis Church, 59 Conn. 551; St. Louis National Stock Yards v. O'Reilly, 85 Ill. 546; Swerney v. Davidson, 68 Iowa 386; Shute v. Hamilton, 3 Daly (N. Y.) 462; Focht v. Rosenbaum, 176 Pa. St. 14. The substituting a tile for a corrugated iron roof was a material changing of the building contemplated in the contract. Burns' Estate v. Fidelity & Deposit Co., 96 Mo. App. 467.

NORTONI, J.—This is a suit for the balance due on a building contract. The contract contained a stipulation that if the building was not completed by the plaintiff on the 15th day of April, he would pay liquidated damages at the rate of one hundred and twenty dollars per day for the delay thereafter. The balance due plaintiff for the work seems to be conceded. The only controversy in the case is in respect of defendant's right to liquidated damages. The defendant's answer avers that plaintiff defaulted twelve days in completing the building, and prays for liquidated damages under the contract at the rate of one hundred and twenty dollars per day, the total claim for liquidated damages being $1,440. In reply, plaintiff concedes the stipulation in the contract touching liquidated damages, but avers the provision referred to was waived or the time extended because of an alteration or extra work ordered by the defendant in the roof of the building. The circuit court accepted the theory of the plaintiff and denied the defendant's right of recovery on his counterclaim. Judgment having been given for the plaintiff, the defendant appeals.

It appears from the written contract in evidence that on February 23, 1904, plaintiff agreed and undertook to erect for the defendant a temporary building of considerable proportions immediately adjacent an important entrance to the grounds of the Louisiana Purchase Exposition, according to plans and specifications therein mentioned. The consideration to be paid therefor was $8,120. It is conceded in the case that the building was to be erected solely for World's Fair purposes; that is to say, to be rented by the defendant to tenants during the period of the World's Fair. It was desirably located with respect to the Fair and its rental value was a high prospect. The Louisiana Purchase Exposition or World's Fair was scheduled to open May 1, 1904. In view of this fact, the parties stipulated that unless the building was completed by April 15th, the

plaintiff contractor would pay the defendant as liqui-
dated damages the sum of one hundred and twenty dol-
lars per day for each and every day he was in default
in completing the building after that date.    Touching
this matter, it was further stipulated that if the build-
ing was completed prior to April 15th, plaintiff con-
tractor should have one-half of the rents accruing there-
tofore, not exceeding in all $400.    There is no question,
in the case as to whether the amount of one hundred
and twenty dollars per day is disproportionate, when
considered with reference to the actual damage the de-
fendant might suffer in event the building was not com-
pleted on the date mentioned; that is, as to whether the
amount stipulated is liquidated damages or penalty. The
amount appears to have been admitted upon the trial
to be liquidated damages stipulated in view of the ex-
traordinary circumstance of the World's Fair period.
This matter will therefore not be considered.

As before stated, to relieve himself from his obliga-
tion to pay liquidated damages, the plaintiff relied upon
the fact that defendant ordered certain extra work in
changing the roof of the building which he had contract-
ed to erect.    The contract was entered into February
23rd; the building to be completed April 15th.    During
the period when the building was under construction,
and on March 18th, defendant ordered a change in the
roof of the building in this: the contract required the
roof to be constructed of corrugated iron, and the de-
fendant desired instead a tile roof.    Plaintiff contractor
agreed to substitute tile and do the extra work for the
additional sum of $200.    This was agreed to by the par-
ties and the building constructed accordingly.    It ap-
pears the change in roofing referred to delayed the con-
tractor in his work several days.    The parties, how-
ever, made no new stipulation with respect to the time
limit in which the building should be completed.    An
extension of time on account of the change in roofing
was neither stipulated nor discussed.    The argument

on behalf of plaintiff is not that the defendant agreed to extend the time, but that the alteration or extra work ordered, operated as an act of the defendant owner to impede or delay the work, which therefore released him from his obligation to complete the building by April 15th. Or in other words, the act of the owner in ordering the extra work, *ipso facto,* operated a waiver of the time limit stipulated in the contract. From the contract before us, there appears to be no provision whatever by which the duty of making alterations or changes in the building is imposed upon the contractor; that is to say, the plaintiff contractor did not, by his contract, so completely place himself within the power of the defendant owner as to be obligated to make alterations in or do extra work on the building by the mere order of the defendant owner or his agent, the architect. Plaintiff contractor was free to make alterations or do extra work at the suggestion of the owner for additional compensation or to decline to do so, as he saw fit. There are cases where the owner has reserved to himself, by contract, the power of ordering alterations or extra work on the building, and the contractor is obligated to the performance of such orders, without the right to demand an extension of time for the completion of the work. In such circumstances, the doctrine obtains to the effect that where the owner orders additional work which the contractor may not refuse to do, and thus delays the completion of the building, the act of the owner in thus ordering the extra work operates to waive or extend the time within which the building should be completed. This for the reason the contractor being completely subservient to the owner under the contract, is compelled to do his bidding and therefore the law, in refusing to tolerate the exaction of that which is impossible, implies relief from the obligation as to time. The law declines to tolerate an arbitrary exercise of the power thus vested in the owner which would result in mulcting the contractor in damages for failing to com-

plete the building within the time originally provided when the owner knew at the time of ordering the alteration that it was impossible to complete the work without an extension.    For noted authorities and leading lights upon this doctrine see the English cases of Westwood v. Secretary of State for India, 11 Weekly Reporter & Digest, 261, and Dood v. Churton, 1 Q. B. Rep. 562; 45 Weekly Rep. & Digest, 490.    See also the following American authorities in point:  Small v. Burke, 92 N. Y. (App. Div.) 338; Ramsburg v. McCahan, 3 Gill. (Md.) 340; Lauer v. Brown, 30 Barb. (N. Y.) 416; Smith v. Gugerty, 4 Barb. (N. Y.) 614; Wright v. Meyer (Tex. Civ. App.), 25 S. W. 1125.    For an instructive article see Vol. 41, Solicitors' Journal, page 589.

In affirmance of the general doctrine that the contractor is released from his obligation to complete the building within the time specified by an act of the owner which impedes or delays his performance, see the following authorities in point:   Holme v. Guppy, 3 M. & W. Rep. 389; Thornhill v. Neats, 8 C. B. Rep. 830; Russell v. Viscount La De Bandeira, 13 C. B. Rep. 148; Close v. Clark, 16 Daly's Rep. (N. Y.) 91; Dannat v. Fuller, 120 N. Y. 554; Eldridge v. Fuhr, 59 Mo. App. 44; Van Buren v. Digges, 52 U. S. 461, 11 How. 461; 30 Am. and Eng. Ency. Law (2 Ed.), 1255, 1256.

The time limit in the contract having been thus removed or waived by the act of the owner, there is substituted therefor an obligation on the part of the contractor to complete the building, extra work included, within a reasonable time, unless otherwise stipulated in the contract.   [Cornish v. Suydam, 99 Ala. 620; Harrison v. Trickett, 57 Ill. App. 515; Bridges v. Hyatt (Sup. Ct.) 2 Abb. Pr. (N. Y.) 449; Greene v. Haines, 1 Hilt (N. Y.) 254; Lloyd on Building (2 Ed.), sec. 39; 30 Am. and Eng. Ency. Law (2 Ed.), 1257, 1258.]

In the cases asserting the doctrine above referred to, the parties wholly failed to provide in the contracts involved for an extension of time and how such exten-

sion might be had.      Now it is certain unless it be contrary to good morals or the policy of the law, competent parties may contract and thereby affix mutual obligations upon themselves and each other, as they see proper.      It is therefore a well settled rule of law that if a party, by his contract, charge himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by an act of God, the law, or the other party.      Unforeseen difficulties, however great, will not excuse him.      [Dermott v. Jones, 69 U. S. 1, 7.]

In the present instance, the parties contemplated that the prosecution of the work might be delayed by the act, neglect or default of the owner, and thus contemplating, availed themselves of their right of contract in respect of these matters.      They stipulated that in event the plaintiff's work should be delayed from any of the causes mentioned, he might have an extension of time equal to the period of his delay, and pointed out therein the course to be pursued by him in order to obtain the extension contemplated.      This the parties had a perfect right to do; and if their contract be plain and unambiguous, it is the duty of the court to sustain and enforce it as written, wholly irrespective as to whether it imposed a weighty burden or a hard bargain on the one or the other.      Article seven of the contract is as follows:

"Article VII.      Should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, of the architect, or of any other contractor employed by the owner, upon the work, by any damage caused by fire,. lightning, earthquake, cyclone or other casualty, for which the contractor is not responsible, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architect; but no such allow-

ance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of such delay."

It is obvious that the provision of the contract above quoted was inserted by the parties in view of the doctrine established by the cases supra, to the effect that upon the contingency of delay arising from an act or default of the owner, the matter of time is treated as waived. To relieve the hardship which may be entailed by an application of the doctrine referred to, the parties stipulated that any extension of time which in probability might become essential as a result of an act of the owner, should be brought forward immediately for his consideration face to face. In the present instance, time was of the very essence of the contract, The building was to be temporary in character only and of practically no value unless erected in time to procure tenants for the World's Fair business. It was therefore paramount that the owner should be apprised of the fact if an extension were to be claimed, or would likely result from any act or default on his part. In such circumstances, had the owner known an extension of time would likely occur or a claim therefor be made because of his act, it was within his power to withhold the act or remove the cause which was likely to induce it. And further, it is important, too, that stale claims for delay should not be presented. With these matters in mind, the parties stipulated touching the question. It will be observed the purport of the provision is that the contractor could claim an extension of time for such a period as the extra work caused by the act of the owner, might delay him in the completion of the building. But this is not all; for it appears as a condition precedent to the right of the contractor to have an extension of time, he assumed the obligation to present his claim therefor to the architect in writing within forty-eight hours of the occurrence of such delay. Provisions in building contracts of the character here in

judgment have been sustained from an early period. In the leading English case of Jones v. St. John's College, 6 Q. B. 115, 19 W. R. & D. 276, it was stipulated in the contract that in event extra works were ordered, time for the completion of the building might be extended upon an order of the clerk of the works to that effect. Extra works were ordered by the clerk and executed by the contractor.   No extension of time was procured from the clerk of the works for completion of the building and, as in the present case, it does not appear that the contractor applied for such extension.   The court gave judgment to the effect that this and other facts distinguished it from the case of Westwood v. Secretary of State for India, supra.   It appearing that the contractor agreed to perform the contract within the time limit, unless an extension was given by the clerk of the works, the Queen's Bench declared he was bound by the stipulation to that effect and that, in the face of such express stipulation, the law could not imply to the contrary.   In the principal opinion, it is said: "We have the contract set out in the replication, and therein appears an express provision by which time may be extended if it is thought fit so to do.   The contractor says: 'I will perform within a certain time, unless an extension of time is given to me.'   It appears to us that in the face of that stipulation you cannot imply such a contract as Mr. Manisty argues should be implied, however impossible the alteration may make the work. The plaintiff, when he undertook the work had the power to measure the extent of his obligation, and he cannot excuse himself by saying now that what he contracted to do cannot be performed."   In that case, as in this, plaintiff sued for a balance due upon the contract, and the defendant counterclaimed for damages because the plaintiff had failed to complete the work within the time agreed upon.   Of the English cases we have examined, this more nearly resembles the case now in judgment than any other.   Its doctrine is in full ac-

cord with the American cases on the subject. Where
the building contract provides, as in this case, that the
time may be extended when alterations or extra work
is ordered by the owner, or the contractor is delayed by
the act or default of the owner, provided a claim for
such extension is asserted by the contractor, the author-
ities declare the obligation of the contractor to make
claim for an extension of time, to be a condition prece-
dent to his right thereto.    [Wagner Co. v. Cawker, 112
Wis. 532; Curry v. Olmstead, 26 R. I. 462; Feeney v.
Bardsley, 66 N. J. L. 239; Davis v. Lacrosse Hospital
Assn., 121 Wis. 579; Kelly v. Fejervary, 78 N. W. (Ia.)
828; Two v. Newbold-on-Avon School Board, 1 Cab. &
L. 261.    See also Brown v. Strimple, 21 Mo. App. 338,
341; Florida, etc., R. R. Co. v. Southern Supply Co.,
112 Ga. 1.]    In 30 Am. and Eng. Ency. Law (2 Ed.),
1260, the doctrine is thus stated:    "Where the con-
tract requires that the contractor shall give notice of
delays arising from stipulated causes, the contractor
must give such notice to entitle him to be excused for
the delay."    In the consideration of this case, the ques-
tion essentially arose as to whether or not delays oc-
casioned by extra work ordered by the owner and agreed
to by the contractor under a contract in which the con-
tractor was not required to perform the mere order of
the owner if he chose not to do so, amounts to an act
of delay on the part of the owner within the provisions
of the contract above quoted.    It should be a sufficient
answer to this question to say that the case was tried
in the circuit court and the judgment given upon the
theory that the order of the owner for extra work on
the roof was an act of the owner which occasioned the
delay and therefore relieved the plaintiff of his obliga-
tion to complete the building in time.    And this, too,
notwithstanding the provision of the contract authoriz-
ing an extension of time upon claim therefor to cover
delays arising because of the act of the owner.    It may

139 App—2

be said too that counsel representing the plaintiff have presented the case in this court upon the theory that the ordering of extra work by the owner was an act on his part which operated to waive the time limit. From this it appears to be conceded that extra work ordered and inducing delay should be treated as an act of the owner. Of course, if such be an act of the owner, it falls within the express terms of the contract and authorizes an extension of time upon claim made therefor. Aside from this, we find the identical question decided by the Supreme Court of Rhode Island in Curry v. Olmstead, 26 R. I. 462. In that case, the provision of the contract was almost identical with the provision heretofore copied in the opinion. Extra work was ordered by the owner and executed by the contractor, identically in material respects as in this case. The execution of the extra work occasioned delay. The contractor omitted to make his claim for an extension of time, however, identically as in the case now in judgment. The court declared that as the contractor had failed to claim an extension of time on account of the extra work, which could be considered as within the provision of the contract only on the theory that it was an act of the owner, he was not entitled to relief. Or in other words, the contractor was bound to complete the building within the original period agreed upon, unless he had made claim for and procured an extension of time. It appears that the Supreme Court of Wisconsin enforced the same stipulation where work extra of the original contract was involved in the case of Wagner Co. v. Cawker, 112 Wis. 532. The cases last referred to are judgments given by high and respectable courts and are in point. It appears the plaintiff made no claim whatever for an extension of time, as required by the contract, and the time was not extended. In view of the fact that the contract authorized the extension of time upon the plaintiff's request, there was no undue burden or harsh bargain imposed upon him thereby,

Ward v. Haren.

If he failed to procure an extension of time sufficient to cover the delay occasioned by the act of the owner, it resulted from his voluntary relinquishment of a right assured to him under the contract. Under the contract in evidence, plaintiff was entirely free to refuse to perform the extra work involved, or it was open to him to perform it and procure the necessary extension of time by requesting it. In these circumstances, the case is materially distinguished from those in which no method for procuring an extension of time is specified, and the contractor is within the power or subservient to the owner in ordering extras or alterations, which he, the contractor, may not refuse to perform. It is the duty of the courts to sustain and enforce such valid contracts as the parties have made for themselves, and not to eliminate provisions therefrom or interpret new and additional terms therein. Plaintiff having failed to request additional time, he must be deemed to have waived his right thereto and continued his obligation to complete the building within the time originally prescribed. He will not be permitted to claim that his time was extended or waived by the operation of law when he failed to abide the obligation of his contract and present his claim for consideration at the time therein required.

To the end that a trial may be had with respect to the number of days' delay referred to, the judgment will be reversed and the cause remanded, to be proceeded with in accordance with the views expressed in this opinion. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur, the latter in the disposition of the cause but not in the construction of the contract.