The order of the trial court sustaining the motion for new trial is affirmed.

PER CURIAM:

The foregoing opinion by KIMBERLIN, Special Judge, is adopted as the opinion of the Court.

All concur.

ST. LOUIS FLEXICORE, INC., a Corporation, Plaintiff-Respondent,

v.

Mack B. LINTZENICH and Caryl Anne Lintzenich, d/b/a M & B Construction Company, Defendant

and

Home Federal Savings & Loan Association of Overland, a Corporation, Defendant-Appellant.

No. 32470.

St. Louis Court of Appeals.

Missouri.

April 18, 1967.

Morton R. Newman, St. Louis, for defendant-appellant.

Edwards & Schiff, Martin Schiff, Jr., Clayton, for plaintiff-respondent.

DOERNER, Commissioner.

In this suit to establish a mechanic's lien the decisive question presented is whether plaintiff's lien should be adjudged superior or subordinate to two deeds of trust held by defendant Home Federal Savings and Loan Association of Overland. The co-defendants, Mack B. Lintzenich and Caryl Anne Lintzenich, his wife, who had been the owners of the real estate involved and who under the name of the M & B Construction Company were constructing the improvements, did not appear and were declared in default. The chancellor found that the Lintzenichs were indebted to plaintiff in the sum of $9918.98, including interest, for labor and materials, that plaintiff's lien was superior to the deeds of trust held by defendant Home Federal, and entered judgment accordingly. Following the overruling of its post-trial motions defendant Home Federal (hereafter referred to as defendant) appealed.

The salient facts are mainly a matter of record and are not in dispute. The Lintzenichs were the owners of a parcel of real estate situated on Walton Road in St. Louis County, and proposed to build thereon what was named the Charlack Apartments. Using the fictitious name, M & B Construction Company, under which they did business as the general contractor of the project, they entered into an agreement with plaintiff on July 19, 1960 by which plaintiff agreed to furnish and install concrete floor and roof slabs, for which the Lintzenichs agreed to pay plaintiff $23,997.

Plaintiff's first delivery of the slabs was on August 17, 1960, and its last work under the contract occurred on December 15, 1961. In response to plaintiff's first bill, the Lintzenichs paid plaintiff $3500 on account about 90 days after its first delivery. Subsequently, on December 20, 1960, the Lintzenichs executed a note for $115,000 to the defendant to finance the construction of the apartment building, together with a deed of trust on their Walton Road property to secure the loan. At the same time the Lintzenichs executed an instrument in which they approved various expenses incurred in connection with the making of the loan, and by which they directed the defendant to disburse upon their orders the balance of $110,454.55 due them. In addition, Lintzenich supplied defendant with a statement containing a breakdown of the items of construction costs, including $23,970 for concrete floor and roof slabs, and the defendant set up a ledger control sheet showing that that sum was allocated to the plaintiff for such item.

Pursuant to a voucher signed by Lintzenich, defendant paid plaintiff $4500 on February 9, 1961 out of the construction account. Thereafter, about April 1, 1961, Lintzenich telephoned Charles C. Doe, plaintiff's vice-president, and stated that he was in the process of arranging for additional financing at the Creve Coeur Bank, and that it would be very helpful to him if plaintiff would accept a check post-dated May 31, 1961. Lintzenich assured Doe that the check would be good when presented to the bank on that day. Plaintiff had done business with Lintzenich on other jobs over a period of 12 to 13 months, and Doe agreed to and did accept the check of M & B Construction Company for $8010.34, dated May 31, 1961, drawn on the Creve Coeur Bank. Later, on April 11, 1961, Lintzenich gave plaintiff a voucher directing defendant to pay plaintiff $7866.68.[1] Doe presented it to defendant, was requested to sign a waiver of lien showing that that amount was final and full payment,

---

1. This figure was the result of a mathematical error.

did so, and defendant paid plaintiff that sum on April 12, 1961. Doe testified that he knew that he was signing a waiver and release of any mechanic's lien plaintiff might have, but that he did so in reliance on Lintzenich's assurance that the post-dated check would be paid.

Shortly before May 31, 1961, Lintzenich telephoned Doe and informed him that there were insufficient funds in the Creve Coeur Bank to cover the post-dated check, a fact which was confirmed when plaintiff presented the check to the bank for payment on that date and payment was refused. About the same time defendant became aware that approximately $8,000 remained due plaintiff on its contract. According to defendant's records, there was over $16,000 in the construction account at that time. The same record shows that the funds in the construction account were exhausted on September 20, 1961, and that thereafter defendant advanced money out of its own treasury, which reached the sum of $55,586.28 on March 3, 1962, according to the final entry on the construction record. However, to obtain security for such advancements defendant obtained another deed of trust from the Lintzenichs, dated September 12, 1961, covering both the Walton Road and other real estate owned by them.

Plaintiff commenced the statutory procedure for perfecting its mechanic's lien on March 9, 1962, which culminated in the institution of this suit on March 22, 1962. On the same day it filed a lis pendens notice with the Recorder of Deeds of St. Louis County. Shortly thereafter, on March 27, 1962, defendant foreclosed on the Walton Road property here involved, as well as on three or four other pieces of real estate owned by the Lintzenichs, and bought in the Walton Road property for $118,000. Its bid for the other Lintzenich real estate was not stated. Defendant subsequently sold the Walton Road property in June, 1962, but no testimony or evidence was offered by defendant as to the sales price. Instead, defendant inquired of its

witness, Ralph W. Fassel, its executive vice-president, the factors that were taken into consideration in determining the selling price, and when an objection to the question was sustained, offered his testimony pursuant to Civil Rule 73.01(a), V.A.M.R. So received, Fassel's testimony was that there was taken into consideration the original amount of the deed of trust, costs incurred in administering the deed of trust, the amount of the overdraft, any money expended in completing the property, and the costs of foreclosure. The $8,000 claimed by plaintiff was not taken into consideration, according to Fassel. On cross-examination Fassel admitted that he had learned, around May 31, 1961, that plaintiff was claiming some $8,000; he conceded that defendant was aware, prior to the foreclosure, that plaintiff was asserting a lien against the Walton Road property; and he stated that plaintiff's claim was not taken into consideration in arriving at the sale price of the Walton Road property because defendant made a determination that plaintiff's claim was not a good one. It was stipulated by both parties that notice of plaintiff's unpaid account and claimed lien and demand for payment was served on the Successor Trustee under the Walton Road deed of trust before the sale was called.

In the course of settling the pleadings defendant alleged, in paragraph 4 of its original answer, that by the instrument dated April 12, 1961, executed by plaintiff in consideration of defendant's payment to it of $7866.68, plaintiff had waived and released any right it had to a mechanic's lien. Plaintiff's motion to strike that part of defendant's answer was sustained, and thereafter, after alleging the same essential facts regarding the instrument executed by plaintiff and the payment made to it, defendant in its amended answer pleaded that plaintiff should be estopped from asserting a mechanic's lien. In its motion for a new trial the defendant maintained that the court erred in sustaining plaintiff's motion to strike the defense of waiver from its original answer, and it devotes the ma-

jor portion of its brief to urging that allegation of error here. The evidence regarding the execution of the instrument dated April 12, 1961, was fully developed and defendant makes no claim that by the striking of its plea of waiver it was prevented from introducing any evidence which would have supported that defense.

■ As was done under similar circumstances in E. C. Robinson Lumber Co. v. Ladman, Mo.App., 255 S.W.2d 72, without regard to the action of the trial court we will consider all of the evidence to determine whether it was sufficient to sustain either defendant's plea of waiver or that of estoppel. In that connection it is appropriate to point out that it is undisputed that plaintiff's first delivery of material was made on August 17, 1960, and that the earlier of defendant's two deeds of trust on the property was not executed by the Lintzenichs until December 20, 1960. Consequently, plaintiff's lien must be adjudged to be prior and paramount to defendant's deeds of trust unless plaintiff waived or is estopped from asserting its lien. Schwartz v. Shelby Const. Co., Mo., 338 S.W.2d 781; Schroeter Bros. Hdwe. Co. v. Croatian "Sokol" Gymnastic Ass'n, 332 Mo. 440, 58 S.W.2d 995; Langdon v. Kleeman, 278 Mo. 236, 211 S.W. 877.

However sharp may be the distinction between waiver and estoppel in other areas of the law, it is apparent that as applied in recent mechanic's lien cases such defenses have been regarded as virtually synonymous. Instead, the courts have examined the equities of the situation in the light of the facts, and have allowed or denied the lien according to the circumstances involved. Thus in Giammarino v. J. W. Caldewey Const. Co., Mo.App., 72 S.W.2d 159, the lien claimant, a subcontractor, had a contract to perform plastering work in the amount of $550. After the completion of the work the general contractor gave the lien claimant a check for $250 in part payment, in return for which the lien claimant executed a document by which he waived any and all lien rights to which he was en-

titled. The check which the claimant had received was not paid when presented to the general contractor's bank. Meanwhile, the owner of the property, when the claimant's waiver was exhibited to him, paid the general contractor $250 in reliance thereon. In the claimant's action to establish a lien the owner interposed the waiver as a bar. The trial court allowed the owner credit for the $250 paid the general contractor on the strength of the waiver, but gave the claimant judgment for the balance of $300, together with interest, and impressed a lien on the property. In affirming the judgment this court stated (72 S.W.2d 160):

> "Appellants insist here that the court below erred in adjudging respondent entitled to a mechanic's lien against their property because respondent waived his right to such lien by executing the lien waiver before mentioned. It is manifest, however, that such lien waiver was ineffective, for want of any consideration to support it, except in so far as the appellants in reliance upon such lien waiver, made payment to the construction company. 40 C.J. 314, 340. Since the court allowed appellants credit for the payment of $250 made by them to the construction company, they have no ground for complaint on account of such lien waiver."

That passage from the Giammarino case was quoted with approval in the recent case of Mid-West Engr. & Constr. Co. v. Campagna, Mo., 397 S.W.2d 616, 629, and the comment made that:

> "The supporting principle for this rule is in effect one of estoppel. The party executing a lien waiver will not be heard to assert its invalidity as against an owner who has paid out money or otherwise changed his position to his detriment in reliance upon the waiver. * * *"

■ As those cases demonstrate, the converse of that principle is likewise true. That is, the invalidity of the lien waiver may be successfully asserted by the lien claimant if the owner or other person

interested has not paid out money or otherwise changed his position to his detriment in reliance upon the waiver. That is the situation in the instant case. It is undisputed that plaintiff did not receive full consideration for the lien waiver it executed. The evidence also shows that between April 12, 1960, when plaintiff executed the waiver, and May 31, 1960, when defendant learned that over $8,000 was still due plaintiff because payment had been refused on the check received from M & B Construction Company, defendant did not pay out any money in reliance upon the lien waiver. Nor did it, during that period, change its position to its detriment. What it did thereafter by way of foreclosing its deed of trust, purchasing at the sale, and selling the property, it did with full knowledge of plaintiff's claim, and under the erroneous conclusion that plaintiff's claim was no good.

Furthermore, defendant's evidence fell far short of showing that it would be inequitable to grant plaintiff a lien because defendant sustained a loss on the entire transaction. It failed to show the actual price at which it sold the Walton Road property, following the foreclosure. It likewise failed to show the disposition of the 3 or 4 other pieces of real estate owned by the Lintzenichs upon which it foreclosed on the same day. Such evidence was peculiarly within its own knowledge, but was not produced. For aught that appears in the record defendant may have even made a profit on the entire transaction. Considering all of the circumstances in the record before us the equities weigh in favor of the plaintiff. Greenfield v. Petty, 346 Mo. 1186, 145 S.W.2d 367.

Accordingly, the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.