**HERBERT & BROONER CONSTRUCTION CO., Appellant,**

v.

**Donald GOLDEN et al., Respondents.**

Herbert & Brooner Construction Co., Respondent,

v.

**Donald Golden, Appellant.**

**Nos. KCD26146, KCD26151.**

Missouri Court of Appeals, Kansas City District.

Sept. 4, 1973.

Brown, Douglas & Brown, Wendell E. Koerner, Jr., St. Joseph, for respondent-appellant.

Kranitz & Kranitz, Theodore M. Kranitz, St. Joseph, for appellant-respondent.

Before WASSERSTROM, P. J., and SHANGLER and SWOFFORD, JJ.

SHANGLER, Judge.

Plaintiff Herbert & Brooner Construction Company, Inc., brought an action to enforce a mechanic's lien upon land and improvements owned by defendant Golden and to impress the lien with priority over the first deed of trust of defendant New England Mutual Life Insurance Company and the second deed of trust of defendant Metcalf State Bank. Defendant Golden counterclaimed for damages from delay in construction and defective work. The court awarded $33,916.77 on the petition and $5,799.40 on the counterclaim—less than the full monetary relief sought by either—and accordingly entered judgment for plaintiff for $28,117.37, but denied judgment of special lien. Only plaintiff construction company and defendant Golden have appealed.

544

The defendant Golden, owner of the Hillcrest Shopping Center in St. Joseph, Missouri, invited bids for the construction of two shops and a theater complex. On February 14, 1969, plaintiff construction company submitted a proposal for the project at a cost of $390,986.00 for completion within 250 days after contract date. Plaintiff was selected as the general contractor in April of 1969, but the Contract for Construction was not formally executed until May of 1969, after changes in the plans and specifications had reduced the cost of construction to $352,212.77, a level acceptable to Golden and to Durwood-American, Inc., the theater-tenant surcharged by the lease for excessive construction costs. One formal change was made during construction which increased the cost by $550.-00. Plaintiff had actually begun work on the project about a month before the contract date of May 20, 1969, under a letter of promise from defendant Golden that plaintiff had been awarded the contract. The letter stated also that a written contract was in preparation which would provide that construction be completed within five months of April 18, 1969.

As finally executed, the contract specified September 15, 1969 as the completion date. The contract authorized changes in work only by written work order signed by the owner and architect and provided for extension of the contract time by written claim submitted to the architect. No request for extension of time was made during the construction of the project. The writing also included as a contract document the original bid by plaintiff Herbert & Brooner which called for completion within 250 days after contract date.

As each phase of construction was completed Herbert & Brooner submitted a certificate for payment to the architect who approved payment and forwarded the certificate to Golden for his approval and payment. Each certificate of payment was accompanied by a Waiver and Release of Lien executed by Herbert & Brooner and which recited as condition subsequent that

the waiver would be without effect if payment for the work was not made. Golden paid every certificate approved by the architect except the last two which totaled $33,916.77 and which represented the 10% retainage and final payment. Golden conceded he owed the amount but that he withheld payment because of his own claim for recoupment of damages caused by Herbert & Brooner's defective work and delay in performance. Payment for two items of extra work was also in dispute. The plans and specifications had incorrectly located a water main. Additional expense became necessary to extend the water main from its actual location to the new building. A change order in the amount of $1,247.00 was prepared by the architect, signed by the contractor, but not by Golden. The work was nevertheless done by the contractor and Golden admits that if he is found to owe for the work on the main, the figure stated is a fair one. Herbert & Brooner made changes also, without approval by Golden by formal change, order, in the structural supports of air conditioners and claims $960.00 for this extra work.

Construction was not substantially completed until the first week of December, 1969, well after the contract date of September 15, 1969. The theater-tenant, Durwood, took possession sometime in November under a lease provision that upon substantial completion of the construction of the theater premises Durwood would have 60 days to install furnishings and fixtures without rental obligation. Durwood commenced paying rent to Golden on December 25, 1969.

Golden financed his interim construction loan of $325,000.00 through General Savings & Loan Association. The loan agreement and deed of trust were dated June 19, 1969. Golden's permanent loan was financed by New England Mutual Life Insurance Company and Metcalf State Bank of Overland Park, Kansas. New England's loan of $275,000.00 was secured by a first deed of trust and Metcalf State

Bank's loan of $50,000.00 was secured by a second deed of trust. On December 11, 1969, these end loans were closed and the interim loan of General Savings repaid.

The mechanic's lien of Herbert & Brooner was perfected in conformance with statute and suit to enforce the lien was timely filed. The petition sought judgment against Golden for $36,123.77 with interest. This claim consisted of $33,916.77 admittedly owed on the two unpaid certificates of payment, $1,247.00 for the installation of the water main not required by the original contract and $960.00 for modification of the structural supports of the air conditioners. The petition also sought the enforcement of a special lien upon the property and a declaration that such lien was prior to the deeds of trust arising out of the permanent financing. In their separate answers, Golden and New England pleaded waiver and release of lien by Herbert & Brooner. Golden also counterclaimed for breach of contract for the delay of completion beyond September 15, 1969. He claimed as damages loss of rental income from Durwood, payment of additional interest on the construction loan, the fee for the extension of the loan, and further counterclaimed for breach of warranty of quality of construction.

In rendering judgment, the court found that the two provisions for completion date in the integrated contract were conflicting but that the September 15, 1969 date must control. The court further found, however, that Golden anticipated the delay in completion from the beginning and actually expected completion around November 1, 1969. Accordingly, the court denied Golden's claims for damages between September 15 and November 1, 1969. Defendant Golden was awarded damages of $3,250.00 for the fee for extension of the construction loan from November 1 to December 15, 1969 and for interest of $2,549.40 paid on that loan between those dates. Golden's claim for lost rentals was denied as was his claim for damages from defective con-

struction. Plaintiff's claim for additional work was denied because not done in accordance with the change order procedure of the contract. Judgment was entered for plaintiff for $28,117.37 but the enforcement of special lien and declaration of its priority over the existing deeds of trust sought by plaintiff were denied by the court.

The lien of the mechanic or materialman is a remedy in the nature of a charge on the land given by statute to secure a priority of payment for the performance of labor or the supply of material to buildings or other improvements to be enforced against the particular property in which they have become incorporated. §§ 429.010 through 429.060, RSMo 1969, V.A. M.S., Phillips on Mechanics' Liens, p. 16. The lien is exclusively a creature of statute and the right to enforce it derives solely from legislative enactment. Fleming-Gilchrist Constr. Co. v. McGonicgle, 338 Mo. 56, 89 S.W.2d 15, 18 [2] (1935). "Our lien statutes are based on and justified by the principle that those who have contributed labor or material to the improvement of property are entitled to look to the property for compensation." Putnam v. Heathman, 367 S.W.2d 823, 828 [2] (Mo. App.1963). And where the mechanic builds a new building, § 429.050, RSMo 1969 charges the construction with his lien and favors such lien with absolute priority over existing encumbrances. Trout's Investments, Inc. v. Davis, 482 S.W.2d 510, 515 [3] (1972); Haeussler v. Thomas, 4 Mo.App. 463, 467 (1877). A claim of lien as well as the preference accorded the lien by statute may be waived, but the intention to do so must be clearly manifested. Lee v. Hassett, 39 Mo.App. 67, 71 (1889); Langdon v. Kleeman, 278 Mo. 236, 211 S. W. 877, 878 [2, 3] (1919). To be valid a lien waiver must be supported by consideration or have induced a detrimental change of position in reliance upon such waiver. Giammarino v. J. W. Caldewey Constr. Co., 72 S.W.2d 159, 160 [1–3] (Mo.App. 1934); St. Louis Flexicore, Inc. v. Lintz-

enich, 414 S.W.2d 787, 790 [1] (Mo.App. 1967); 57 C.J.S. Mechanics' Liens § 224 p. 795.

The trial court denied Herbert & Brooner judgment for a special lien upon the improvements and real property of defendant Golden on the ground that plaintiff had waived claim to its statutory lien and defendants New England Mutual Life Insurance Company and Metcalf State Bank had changed their positions in reliance on the lien waiver. Plaintiff Herbert & Brooner does not deny execution of waiver of lien on December 3, 1969, but contends that the purported waiver was invalid for want of consideration, and thus its right to assert the lien remained as unimpaired as if the waiver had never been executed. The evidence was that as a condition to the disbursement of the permanent loan proceeds, New England Life Insurance Company required defendant Golden to obtain waivers of lien from the general contractor, all subcontractors and materialmen. Golden's letter to Herbert & Brooner of September 18, 1969, soliciting these instruments contained this promise and expression of intention: "We will also require a Lien Waiver from your Company to be delivered to us at such time as the final payment is made to you." In response, on December 3, 1969, Herbert & Brooner executed its lien waiver[1] which recited as consideration the payment of $352,767.77, the total project cost as modified by agreement. Contemporaneously defendant Golden issued his letter to Herbert & Brooner acknowledging that money was still due plaintiff for the job. There can be no doubt that the consideration for which Herbert & Brooner executed its waiver was the anticipation of payment of the remaining amounts due for construction, but not yet paid. Nor can the instrument of waiver reasonably be read to intend the relinquishment of lien absolutely in the absence of the promised payment. The intention of Herbert & Brooner not to be separated from its right of lien in the absence of payment is confined by the practice, continued even after the December 3, 1969 execution of general lien waiver, of submitting certificates of payment accompanied by lien waivers which recited the condition subsequent that the waiver would be of no effect if the stated consideration was not paid.

■ The general lien waiver of December 3, 1969 was ineffective for want of consideration to support it and its invalidity may be successfully asserted by the lien claimant, Herbert & Brooner, unless on principles of estoppel "the owner or other person interested has . . . paid out money or otherwise changed his position to his detriment upon the waiver". St. Louis Flexicore, Inc. v. Lintzenich, *supra*, 414 S.W.2d 1. c. 790 [2, 3]; Giammarino v. J. W. Caldewey Const. Co., *supra*, 72 S.W.2d 1. c. 160 [1]; Mid-West Engineering & Const. Co. v. Campagna, 397 S.W.2d 616, 628 [9–10] (Mo.1965). The trial court was clearly correct in finding that by paying over the permanent loan funds to defendant Golden the mortgagees New England Mutual and Metcalf State Bank had changed their positions in reliance upon the waiver. While plaintiff Herbert & Brooner is for that reason estopped to claim for its lien the statutory preference over the prior first and second deeds of trust it would otherwise have been entitled to under § 429.050, that is not to say—absent an estoppel in favor of the owner also—that the lien itself must necessarily be denied. The lien of the mechanic and

---

I. The operative language of the instrument recites: "(W)e the undersigned for and in consideration of Three Hundred Fifty Two Thousand, Seven Hundred Sixty Seven 77/100 Dollars and other good and valuable considerations, the receipt of which is hereby acknowledged . . . do hereby waive and release any and all lien, and claim or right to lien on said above described building and premises (Additions to Hillcrest Shopping Center) under the Statutes of the State of Missouri relating to Mechanic's Liens, on account of labor or materials, or both; furnished by the undersigned to or on account of the said Additions to Hillcrest Shopping Center for said building and premises."

materialman is created by §§ 429.010–429.040 and is given priority over other emcumbrances in certain circumstances by §§ 429.050–429.060. It is evident that the lien may be perfected and established as a charge against the interest of the owner in the premises independently of any claim of priority for the lien. Coe v. Ritter, 86 Mo. 277 (1885); Better Roofing Materials Co. v. Sztukouski, 183 S.W.2d 400 (Mo.App. 1944); Vasquez v. Village Center, Inc., 362 S.W.2d 588 (Mo.1962). It is equally evident that the lien of a mortgage which has been accorded priority is not affected by the subordinated lien of the mechanic or materialman. S. S. Kresge Co. v. Shankman, 240 Mo.App. 639, 212 S.W.2d 794, 801 [1] (1948); 59 C.J.S. Mortgages §§ 552–553. It was in any event acknowledged by the testimony of counsel for New England Mutual that the only object of the requirement of plaintiff's waiver was to subordinate its lien for materials and labor to the lien of New England Mutual's mortgage about to be placed on the property, and not to extinguish it. See, Lee v. Hassett, 39 Mo.App. 67, 71. It does no prejudice to the priorities of defendant mortgagees, but rather accords with the remedial purposes of Chapter 429, to allow plaintiff the security of a lien to the extent its labor and supplies have imparted value to the interest of defendant Golden in the land and improvements.

▪ Golden contends, however, that he also changed his position in reliance upon the lien waiver by giving over notes and mortgages to New England Mutual and Metcalf State Bank to secure the advance to him of $325,000.00. Such a change, it must be said, was certainly no detriment to Golden; rather, it was of great benefit to him. His interim construction loan was soon to become due and, as Golden himself admitted, he could not have obtained the permanent financing he needed to pay off the construction loan without plaintiff's waiver of lien. "The fact that claimant may be estopped to enforce his lien to the prejudice of a third person does not necessarily show that he is estopped to enforce it against the owner, especially where the owner was a party to, and reaped the benefit of, the acts which gave rise to the estoppel against the third person." 57 C.J. S. Mechanics' Liens. § 229; see also, Haney-White Co. v. Stafford, 96 N.J.Law 283, 114 A. 746 (1921). There was no waiver of lien by plaintiff in favor of defendant Golden who failed to perform the promised consideration, nor is plaintiff otherwise estopped to assert its claim of lien against him. We determine that plaintiff is entitled to judgment of special lien against defendant Golden's equity of redemption and that the liens of New England Mutual's first deed of trust and Metcalf State Bank's second deed of trust are superior thereto.

▪ We next consider the amount of the lien to be charged. It was judicially admitted by defendant Golden, as we have noted, that he owed plaintiff the $33,916.77 submitted to defendant by the two certificates of payment dated May 20, 1969. Plaintiff seeks judgment also for two items of extra work, $1,247.00 for extension of the water main and $960.00 for modification in the structural support of the air conditioners. The trial court denied recovery for these items because plaintiff did not comply with the procedures of Article 12 of the General Conditions of the contract which required the contractor to obtain the written order of the architect and owner before additional work could be valid. It is the general rule, properly applied by the trial court to the facts in this case, that where a construction contract requires a written change order, there is no right to recover for extra work without such a writing or waiver by the owner. Orpheum Theater & Realty Co. v. Kansas City Casualty Co., 239 S.W. 841, 944 [1] (Mo. 1922); see also, Annotation, 2 A.L.R.3d 620. Herbert & Brooner does not claim a waiver, but appears to contend that defendant Golden judicially admitted indebtedness for the additional work done. The record does not support this contention.

The trial court properly limited award of damages on plaintiff's petition to $33,916.-77, the amount admittedly due under the contract for the balance of construction.

The extent to which the monetary award on plaintiff's petition may be properly reduced by defendant Golden's counterclaim for recoupment is determined largely by the completion date for construction which governs the contract. The contract proper executed by the parties in May of 1969 called for completion by September 15, 1969. The bid proposal of February 14, 1969, incorporated into the agreement as a contract document, provided for completion within 250 days of contract date. The court concluded these provisions conflicted but that the September 15, 1969 date was intended to control.

Plaintiff contends, firstly, that as a matter of law completion date was 250 days from May 20, 1969, the contract date, or January 25, 1970. This argument proceeds on the premise that the 250 day performance provision is the first of the two to appear in the contract and on the rule of construction [citing Drucker v. Western Indemnity Co., 204 Mo.App. 516, 223 S.W. 989, 991 [3] (Mo.App.1920)] that the first of conflicting contractual clauses governs. Plaintiff's claim to priority of mention derives from Article 1 of the Standard Form of Agreement which incorporates the bid proposal as a contract document—and thus inferentially establishes the 250 day completion term. The same Article 1, however, also incorporates other documents, including the Agreement itself which calls for completion by September 15, 1969, as a part of the contract, and thus inferentially establishes that date as the completion term. In fact, the first explicit provision for time of commencement and completion is found in Article 4 of the Standard Form of Agreement and requires performance by September 15, 1969. In any event, the principle of construction which rejects a repugnant clause is an expedient which a court will very reluctantly employ, usually resorted to when the subsequent clause has

been carelessly introduced into the contract. Larabee Flour Mills v. West Plains Commission Co., 216 Mo.App. 257, 262 S. W. 389, 391 [1] (1924). The rule has no application in the circumstances of this case.

The trial court correctly concluded that the contractual provisions for completion of performance were ambiguous and thus subject to judicial construction. It is the duty of a court which undertakes to construe an agreement of doubtful meaning to determine and give effect to the intention of the parties. Fulkerson v. Great Lakes Pipe Line Co., 335 Mo. 1058, 75 S.W.2d 844, 846 [1] (Mo. banc 1934). To that end a court may properly consider the subject matter of the contract, the circumstances attending its execution, and the apparent purpose which the parties sought to accomplish. Tamko Asphalt Products, Inc. v. Fenix, 321 S.W.2d 527, 532 [1–6] (Mo.App.1958). The evidence is clear that Herbert & Brooner commenced work on the project in April of 1969, about one month before the execution of the formal contract, on the strength of defendant Golden's letter of promise that plaintiff had been awarded the project. That letter specified that the contract would require completion within five months, that is, by the middle of September of 1969, a requirement confirmed by telephone between Golden and Brooner before the contract was signed. Later, during construction, Brooner acknowledges that Golden told him "he needed the building in September", to which Brooner replied "(he) would do (his) best to complete the job in this time". The conclusion seems inescapable that, at least as between the two time references in the contract documents, the September 15, 1969 completion date was intended to control. Nor do we vary this conclusion because of the testimony of defendant Golden's architect that even when the contract was let completion by September 15, 1969 was not possible. " 'The plaintiff, when he undertook the work, had the power to measure the extent of his obligation, and he

cannot excuse himself by saying now what he contracted to do (could not have been) performed.'" Ward v. Haren, 139 Mo. App. 8, 119 S.W. 446, 449 (1909). It is also clear that the construction was not substantially complete by that date and that the contractor is therefore, absent excuse or waiver, liable for damages suffered by Golden as a result of the breach.

■■■ Plaintiff contractor contends, however, that on September 15, 1969 completion date was, in any event, waived by Golden's continued payments made to plaintiff without objection after the September completion date, and thus plaintiff was exonerated from damages for delay in performance. This argument confuses two separate issues, namely, *waiver of the time* for performance and *waiver of damages* for failure to perform in time. There is no doubt that a default in the performance of a contract may be waived. 17 Am.Jur. 2d, Contracts, § 447. This is not to say that a contractor who promises to complete by a definite time is not bound by his promise. His unexcused failure is a breach of duty for which the owner has a right to damages. Ottumwa Bridge Co. v. Corrigan, 251 Mo. 667, 158 S.W. 39, 46 [7–9] (1913); Walter v. Huggins, 164 Mo.App. 69, 148 S.W. 148, 152 [2] (1912); Corbin on Contracts, § 720. The general rule is fully stated in 17A C.J.S. Contracts § 506(2)b(b):

A waiver of the provision as to time of performance does not necessarily waive the owner's claim for damages by reason of the failure to perform in time, since the owner may grant or refuse to grant an extension of time, irrespective of damages resulting therefrom. Thus the mere fact that the owner permits the contractor to continue the work after the time for its completion, although it constitutes a waiver of the time of performance, as far as concerns the right of the contractor to recover on the contract, . . . has been held not to waive the owner's right to recover damages for the delay in performance.

So, the owner does not waive his claim for damages . . . where (he), after the time for completion, makes partial payment to the contractor, or pays orders given to the subcontractors, or accepts the work on its completion after the time of performance, particularly where the contract so provides.

Even where, as in this case, time is made the essence of the contract, the owner's voluntary waiver of strict performance does not, as a matter of course, operate to discharge the contractor from liability for delay. Hough v. Jay-Dee Realty and Investment, Inc., 401 S.W.2d 545, 551 [15] (Mo.App.1966); Ottumwa Bridge Co. v. Corrigan, *supra,* 158 S.W. 1.c. 46 [7–9]; 13 Am.Jr.2d, Building and Construction Contracts, § 53.

■■ Nor, in the circumstances of this case, may the waiver of time of performance be construed as excuse of delay in performance or to imply a reasonable time for performance as plaintiff here contends. The contract procedure for excuse of delay in performance by the contractor was specified in Articles 8.3.1 and 8.3.2 of the General Conditions and required all claims for extension of time to be made in writing to the architect for his approval by change order. "[W]here the contract contains (such an) article, it is incumbent upon the contractor, in order to avail of an extension of time provided for the completion of the buildings in other portions of the contract, to lay claim therefor at the time and within the time and manner stipulated. Otherwise no such extension of time is available to him on the grounds of waiver, for it will not do to imply a reasonable time in the very face of a provision stipulating a precise time, coupled with another express provision to the effect that such time shall prevail unless extended in the manner agreed upon by the parties." Hiller et al. v. Daman et al., 183 Mo.App., 315, 166 S.W. 869, 872 [3] (1914); Ward v. Haren, 139 Mo.App. 8, 119 S.W. 446, 449 (1909). Here, it is conceded that plaintiff contractor made no claim for extension of

time as required by contract. In the absence of such a claim his delay is not excused and he is subject to damages for the breach of that performance.

The damages defendant Golden claims in recoupment from delay in performance are determinable from September 15, 1969, when performance was due under the contract, to December 10, 1969, when construction was actually completed. We reject as clearly erroneous the trial court's finding that although the parties intended September 15, 1969 to govern performance from the beginning defendant Golden anticipated that completion would be delayed until around November 1, 1969, and therefore he should be allowed damages for delay in performance only from that date. Although there was evidence that each party harbored some doubt that performance could be made by September 15, 1969, there was no consensual expectation of delay beyond the contract date. There was no evidence of intention at the outset to contract for a November 1, 1969 completion, nor thereafter of a novation, nor—as we have shown—of waiver. The trial court's finding is a contradiction which both finds a meeting of the minds to contract, but then denies it legal efficacy. A court may not relieve obligations of contract freely assumed. Hartman v. Chicago, B. & Q. R. Co., 192 Mo.App. 271, 182 S.W. 148, 151 [2–4] (1916).

Golden's interim construction loan for $325,000.00 from General Savings & Loan Association matured on November 1, 1969. On October 30, 1969, because construction was not yet substantially complete Golden obtained a forty-five day extension of the loan to December 15, 1969. General charged a one per-cent fee of $3,250.00 for the extension. Golden claims that the $5,481.22 interest he paid on the loans from September 15, 1969 through December 10, 1969, as well as the $3,250.00 fee for extension of the loan beyond October 30, 1969, are damages which accrued to him from failure of plaintiff to make timely performance. The trial court refused to consider any claim for damages from delay in construction which may have accrued from September 15, 1969 through October 30, 1969, on the theory—already rejected —that performance before November 1 was not actually anticipated by Golden and thus denied him recovery for the $2,598.06 interest paid on the loan during that period. We, too, deny Golden recovery for that amount but for a different reason. The party who seeks to recover for a delay in performance of a contract has the burden to show not only the breach, but that damages have in fact accrued as a direct and natural consequence thereof. Franken v. Carpenter, Mo.App., 364 S.W.2d 15, 19 [6] (1963). Golden's testimony that he had paid $2,598.06 as interest on the loan from September 15, 1969 through October 30, 1969 proved expenditure, not damage. There was no evidence that the payment of interest for that period was made necessary by plaintiff's failure to complete construction by contract date. The loan was negotiated in June of 1969 before the certainty of default was apparent and was due November 1, 1969, a month and a half after completion was contemplated by the contract. The note which evidenced the loan was not shown, and there is nothing to indicate whether the terms allowed prepayment, and if so, at what premium. For all that appears, Golden was obligated to pay the interest until maturity date without possibility of abatement. In short, Golden failed to prove that the $2,598.06 expenditure was proximately caused by plaintiff's breach.

The extension of the $325,000.00 construction loan on October 30, 1969, on the other hand, after plaintiff had been in default some forty-five days, clearly was made necessary by plaintiff's breach of contract. Golden claims as damages the expense of extension of the loan, $3,250.00 or one per cent of the loan, and $2,883.16 paid in interest on the loan from November 1, 1969 until completion of construction on December 11, 1969. The trial court al-

lowed the full extension fee and $2,549.40 (a sum we are unable to derive from the evidence) as reimbursement for interest paid during that period. The evidence conclusively shows, however, that $13,000.-00 of the loan amount was spent by Golden on projects unrelated to the construction under contract with plaintiff. Golden's damage claim, otherwise proved, must be reduced ratably. Golden is awarded as elements of his recoupment damage $3,120.00 for the extension fee ($3,250.00 less $130.-00, or 1% of $13,000.00) and $2,767.83 for interest paid (the $2,883.16 interest payable on the whole loan for that period reduced by $115.33, the amount of interest payable on $13,000.00 for that period).

■ Defendant Golden claimed rentals lost from Durwood-American, his theater lessee, as an additional element of recoupment damage from delay in construction. The lease provided that upon substantial completion of the construction of the theater premises, concerning which Golden was required to give the lessee 30 days' prior written notice, the lessee would have 60 days thereafter to install furnishings, fixtures and equipment without any rental obligation unless the lessee opened for business before the expiration of 60 days. The lease rent was $2,333.34 per month. Golden notified Durwood on August 4, 1969 that substantial completion was anticipated by September 3, 1969, but it was actually not until late November that construction was sufficiently complete to allow Durwood to commence installation, and not until December 25, 1969 that the payment of rent commenced. The trial court found, despite the September 15, 1969 contract date, that since Golden did not anticipate completion before November 1, 1969, the commencement of rents on December 25, 1969, was well within 60 days of November 1, therefore Golden was not damaged. For the reasons we have already given, this finding of the trial court was clearly erroneous, Golden was entitled to those damages which accrued to him as a direct result of plaintiff's breach of the September

15, 1969 contract completion date. Timely performance under the contract would have entitled Golden to rents from Durwood commencing November 15, 1969. Accordingly, Golden is awarded as an element of his recoupment damage, $3,112.44, lease rent lost from November 15, 1969 to December 24, 1969.

Golden claimed damages also for defective workmanship to the roof and other areas of construction. Article 4.5 of the General Conditions of the contract provided a general warranty of good workmanship which was expressly given in addition to any other warranty or remedy required by law or the contract documents. The General Requirements of the specifications, a contract document, set out the contractor's guarantee that the work done under the specifications would be free from defects of materials or workmanship for a period of two years. (It is upon this express warranty that Golden bases his claim.) Section 7A of the specifications requires the contractor to furnish a 20 year bond on the roof. Such a bond was tendered to, but rejected by, Golden because he deemed the penal sum inadequate. In lieu of the rejected bond Golden himself took out a 10 year service and inspection policy from the roofing manufacturer. (There was evidence of neither any specific requirements for the bond or, since the policy was not shown, the coverage the policy afforded.)

■ In denying relief, the trial court found that Golden's rejection of the bond in favor of the service and inspection policy required that he look to the policy agreement for any repairs to the roof. This finding is clearly erroneous because the issue pleaded and presented for determination was Golden's right to recover under the contractual warranty, and not whether another remedy, if otherwise available to defendant, may have been precluded to him. We remand for the determination of this element of Golden's claim for recoupment.

In so doing, it is expedient to discuss those lapses in the proceedings which prevent us, on this de novo review of a court tried case, from rendering the judgment the trial court should have rendered. Although defendant offered evidence of defective workmanship to the fascia and columns of the building exterior and of door closures which did not meet specifications, the trial court's finding touched only the claim of roof defect. Furthermore, although it was stipulated that the work done under the contract was still under warranty at the time of trial, there was no showing that the contractual condition precedent to assert a breach of the guarantee of the General Requirements had been met. This guarantee required the contractor to remove and replace "all such work or materials found by the architect to be defective within the guarantee period." There is no evidence that Golden's claim of defects was ever disclosed to the architect or that he found any within the guarantee period.

Golden's proof was incomplete in another respect. Golden presented an expert witness who was both an architect and structural engineer. His proof tended to support a claim of $250.00 for replacement of primer and paint on portions of the building exterior and, if believed, the replacement of seven door closures at the cost of $700.00. The most serious contention of defect, however, related to the workmanship on the roof. There was evidence that the roof had leaked but that the leakage had been permanently corrected by the installation of shields around the heating and air conditioning units. The defendant's expert examined the roof and found its length marked by blistered ridges, most markedly over the theater area. The expert determined that the blister condition was caused when the moisture in the insulation was converted into steam by the summer heat. The expert gave the opinion that the condition should be repaired because they were "potential roof leaks".

Although he did not probe the entire roof, the expert's "estimate of the approximate cost" of repair was $2,500.00 and of a new roof, $7,000.00 depending upon what closer examination disclosed. Upon remand, counsel will recall that proof of damages —which in this case is the reasonable cost of conforming the roof to the specifications [Burger v. Wood, 446 S.W.2d 436, 442 [7, 8] (Mo.App.1960)]—must be made with reasonable certainty. DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 568 [13–16] (1945); 25 C.J.S. Damages § 26a-c. In the same manner, the cause of the damage must be shown with reasonable certainty. 25 C.J.S. Damages § 27. Thus, although the opinion of an expert, such as defendant's architect-engineer, is competent evidence as to whether construction was properly done [13 Am.Jur.2d, Building & Construction Contracts, § 125], his testimony that there was a "potential" for future leaks from the roof blisters was merely "an assurance that such result was scientifically possible" but was not substantial evidence that the condition will result in leakage. Welker v. MFA Central Co-operative, 380 S.W.2d 481, 486 [1, 2] (Mo.App. 1964). Cognately, this testimony was not sufficient to establish a defect in construction from which damage was reasonably certain to result. Considerations of substantial justice require that the parties have an opportunity to make a complete proof on this issue, and we remand for that purpose.

Finally, plaintiff contends the trial court erred when it failed to allow prejudgment interest. We agree. Rule 101.-06, V.A.M.R., authorizes an award of interest upon an indebtedness for which a lien is prosecuted. § 408.020 RSMo 1969, V.A.M.S., in relevant part provides: "Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon . . . on accounts after they become due and demand of payment is made . . . .". As used in this statute, "ac-

count" is regarded as equivalent to "claim" or "demand". Burger v. Wood, *supra*, 446 S.W.2d l.c. 443 [10]. Plaintiff's demand made by the May 20, 1970 certificates of payment for a sum admittedly due upon a written contract was an "account" within the intendment of § 408.020. While interest cannot be recovered on an unliquidated demand [Cannon v. Bingnam, 383· S.W.2d 169; 173 [4–6—(Mo.App.1964)], a demand is regarded as liquidated for the allowance of interest where the amount due is readily ascertainable by computation or determination according to a recognized standard [Komosa v. Monsanto Chemical Co., 317 S.W.2d 396, 400 [5] (Mo. banc 1958)], and where, as here, the plaintiff's demand is liquidated, the interposition of an unliquidated counterclaim, set-off or recoupment does not convert the liquidated demand into an unliquidated one or preclude the plaintiff's recovery of prejudgment interest [Burger v. Wood, *supra,* 446 S.W.2d l.c. 444 [11–13] or prevent the recovery of interest on the balance of the demand found due from the time it became due. Schmidt v. Morival Farms, 240 S.W.2d 952, 961 [22] (Mo.1951).

Upon retrial, judgment should be entered for plaintiff against defendant Golden in a principal amount determined by the $33,917.77 awarded on the petition reduced by the sum found to be allowable on defendant Golden's counterclaim (which sum shall consist of the total damages adjudged to Golden from delay in performance, namely, $3,120.00 for the extension fee, $2,767.83 interest on the loan period, and $3,112.44 for lost rentals, as well as any damages the trial court may find accrued to Golden from defects in construction), with interest at 6% per annum upon such principal amount from May 20, 1970, and that such judgment be a special lien against the improvements and land owned by defendant Golden subordinate to the first deed of trust of defendant New England Mutual Life Insurance Company and to the second deed of trust of defendant Metcalf State Bank. The costs of the action are apportioned equally between plaintiff and defendant Golden.

The cause is reversed and remanded for further proceedings in accordance with the directions of this opinion.